128 F.3d 541
 21 Employee Benefits Cas. 1937
 Richard A. SCHMIDT, Plaintiff-Appellant/Cross-Appellee,
v.
SHEET METAL WORKERS' NATIONAL PENSION FUND and Sheet Metal
Workers' National Pension Fund Board of Trustees,
Defendants-Appellees/Cross-Appellants.
 Nos. 96-3144 & 96-3254.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 27, 1997.
Decided Oct. 17, 1997.
Rehearing Denied Nov. 12, 1997.
 
 James Schernecker (argued), Anne Applegate-Scott, Action Law, Madison, WI, for Plaintiff-Appellant.
 Naomi E. Soldon (argued), Previant, Goldberg, Uelmen, Gratz, Miller & Bruegeman, Milwaukee, WI, for Defendants-Appellees.
 Bernard O. Westler, Naomi E. Soldon (argued), Previant, Goldberg, Uelmen, Gratz, Miller & Bruegeman, Milwaukee, WI, for Defendants-Appellants.
 Before BAUER, WOOD, Jr., and ROVNER, Circuit Judges.
 ILANA DIAMOND ROVNER, Circuit Judge.
 
 
 1
 Richard A. Schmidt ("Richard") initiated this ERISA action against the Sheet Metal Workers' National Pension Fund ("NPF" or "Fund") and its Board of Trustees ("Trustees") to recover the portion of his father's death benefit that the Fund disbursed to Richard's sister. Although Richard's father failed to designate a beneficiary for his death benefit, Richard contends that his father intended that he be the sole beneficiary and that the proper designation was never made only because a benefit analyst employed by the Fund sent the wrong form after speaking with Richard and his father over the telephone. Richard therefore argues that he is entitled to the contested benefits either under an estoppel or breach of fiduciary duty theory. He further contends that defendants violated ERISA by failing to adequately notify him of his appeal rights. After discovery, the district court granted summary judgment to defendants on each of Richard's claims. Richard now challenges that disposition here, and defendants cross-appeal from the denial of their request for an award of attorney's fees. We agree that defendants were entitled to summary judgment on each of Richard's claims under ERISA. We also do not believe that the district court abused its discretion in refusing to award attorney's fees. We therefore affirm the judgment below.
 
 I.
 
 2
 On March 4, 1994, Allen J. Schmidt ("Allen") was told by his doctors that he had pancreatic cancer and that he had but a few months to live. Allen was not married at the time, and he therefore wished to designate his son Richard as the sole beneficiary of the pension benefit that would be payable upon his death by the NPF, a multi-employer benefit trust fund maintained under ERISA. On March 10, Allen called the Fund's administrative office to inquire about the procedure for designating his son as the sole beneficiary of his death benefit. He spoke on that occasion to Eunjae Lee, an NPF benefit analyst.[1] Allen explained to Lee that he was terminally ill and that he wished to designate his son as the sole beneficiary of his pension death benefit. Because Allen believed that Lee was not fully understanding his request, he asked Richard to attempt to explain it to her. Richard reiterated to Lee that Allen was terminally ill and that he wished to designate Richard as the sole beneficiary of his death benefit. Lee indicated to Richard that she understood and that she would send the proper paperwork. Several days later, the Schmidts received a "Pension or Vesting Application," which they promptly completed and returned to the Fund. On that application, Allen designated Richard as his primary beneficiary and his daughter, Ginger Riphahn, as the successor beneficiary. It turned out, however, that Lee had sent the Schmidts the incorrect form. The "Pension or Vesting Application" was exactly that--an application for pension benefits, and was not the proper mechanism for designating a beneficiary for a pension plan death benefit. A death benefit beneficiary was properly designated only once a plan participant submitted to the Fund the "benefit designation card" included in the front of the Fund's pension plan booklet (the "Booklet").[2] This Booklet had been mailed to all plan participants in 1990.
 
 
 3
 Allen died on April 16, 1994, and on August 29, 1994, Richard received a letter from Lee explaining that because his father had failed to name a beneficiary for his death benefit, the $22,693.13 benefit would be divided evenly between Allen's surviving children in accordance with section 7.01 of the pension plan.[3] Lee included with this letter another copy of the Booklet, which sets out the death benefit eligibility rules and an individual's appeal rights. Upon receiving Lee's letter, Richard called the Fund's administrative office and this time spoke with Barry Sweger, an assistant benefits coordinator. Richard explained to Sweger that Lee had sent his father the wrong form after their March 10 telephone conversation, and Sweger indicated that Richard should write down exactly what had happened and note that his letter was to be considered an appeal to the Fund's Board of Trustees. Sweger explained that all information substantiating Richard's position should be included in the letter and that any supporting documentation should be appended. Sweger told Richard to mail the letter to him and that the Trustees then would consider Richard's appeal at their next meeting. Richard did as he was told, mailing his letter to Sweger on September 30, 1994. He received a letter in response which indicated that his appeal had been received and that it would be considered at the next meeting of the Fund's Trustees. By letter dated May 30, 1995, Richard was notified that the Appeals Committee of the Board of Trustees, consisting of two of the six trustees, had considered his appeal at their May 2 meeting and had determined to deny it. The letter provided the following explanation of the Appeals Committee's decision:
 
 
 4
 As Mr. Schmidt died before he had become a Pensioner, and as he left no surviving spouse, a Death Benefit was payable under [section 7.01]. The designation of beneficiaries for such a benefit is to be made on the form established by the Fund Trustees, in accordance with Section 7.05. This form is a card, found in each Pension Booklet, designating beneficiaries to receive the Sheet Metal Workers National Pension Fund Death Benefit.
 
 
 5
 Mr. Schmidt did not have such a designation on file at the time of his death. The designation of beneficiary section completed by Mr. Schmidt on the pension application received shortly before his death is not the form required by the Trustees to designate beneficiaries for a Death Benefit, but is a designation of beneficiary for pension benefits, in the event any such payments are payable after the death of the retiree.
 
 
 6
 As is provided for in Section 7.01, as no Death Benefit beneficiary designation had been filed by Mr. Schmidt in accordance with Section 7.05, the Death Benefit is payable to Mr. Schmidt's surviving children. As Mr. Schmidt left two surviving children, you and Ginger Riphahn, each of you receives one-half of the Death Benefit.
 
 
 7
 (R. 32, Ex. J (emphasis in original).)
 
 II.
 
 8
 We review the district court's grant of summary judgment on Richard's ERISA claims de novo. Klosterman v. Western Gen. Management, Inc., 32 F.3d 1119, 1122 (7th Cir.1994). We must affirm the judgment for defendants if the record reveals that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Anweiler v. American Elec. Power Serv. Corp., 3 F.3d 986, 990 (7th Cir.1993).
 
 A.
 
 9
 Richard does not dispute that the Trustees' decision to distribute his father's death benefit to him and his sister in equal shares is consistent with the explicit terms of the Plan and the Booklet describing it. The Plan provides that a participant's designation of a beneficiary for his death benefit must be made "in the form and manner required by the Trustees" (Plan § 7.05), and the Booklet explains that the only proper way to designate a death benefit beneficiary is by filing the attached beneficiary card with the participant's local union. (Plan Booklet at 13.) Both the Plan and Booklet note that if no card is on file, the death benefit will be paid first to the participant's surviving spouse, and if no spouse survives, to the participant's children. (Plan § 7.01; Plan Booklet at 13.) The Trustees determined that because Allen had no card on file at the time of his death, the benefit would be distributed to his two children in equal shares, as required by the Plan. Nor does Richard argue that defendants failed to notify his father of the requirement that he designate a beneficiary on the card provided in the Booklet. It is undisputed that the Booklet and Plan were mailed to all participants, including Allen Schmidt, in 1990. As a result, Richard does not assert that the Trustees' decision with respect to his father's death benefit was arbitrary and capricious.[4] He argues instead that defendants should be estopped from adhering to the literal terms of the Plan because of the misrepresentation of its benefit analyst.
 
 
 10
 We agree with the district court, however, that defendants are not estopped from applying the literal terms of the Plan by any oral representation made by Lee in the course of the March 10, 1994 telephone conversation. As we have noted on many occasions, oral representations that conflict with the terms of a written plan will not be given effect, as the written instrument must control. Plumb v. Fluid Pump Serv., Inc., 124 F.3d 849, 856 (7th Cir.1997) ("if the written terms of an ERISA plan do not entitle the claimant to the coverage sought, benefits will not be forthcoming on the basis of oral representations to the contrary."); Vershaw v. Northwestern Nat'l Life Ins. Co., 979 F.2d 557, 559 (7th Cir.1992); Pohl v. National Benefits Consultants, Inc., 956 F.2d 126, 128 (7th Cir.1992); Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir.1992). Although a subsequent modification to a written plan may equitably estop the plan administrator from denying benefits if the alleged modification is in writing (see Black v. TIC Investment Corp., 900 F.2d 112, 116 (7th Cir.1990)), we do not think the writing requirement was satisfied here by the fact that Lee subsequently mailed to the Schmidts the "Pension or Vesting Application." That application did not itself indicate that it was the appropriate mechanism for designating a death benefit beneficiary. Richard's estoppel claim instead depends on what transpired during the March 10 telephone conversation--specifically on what he and his father may have told Lee about Allen's intent, and on Lee's alleged statement that she would send Allen the proper paperwork for designating a death benefit beneficiary. The oral representation upon which Richard's claim is based clearly conflicts with the designation method prescribed by the Plan Booklet, and the Plan itself requires all beneficiary designations to be in the proper form. That is presumably to avoid beneficiary disputes like this one, which only will arise upon a participant's death, when it is too late for his intent to be clarified. It is in precisely this situation, then, that we must refuse to apply estoppel principles to give effect to oral representations that contradict written Plan terms. For these reasons, we agree with the district court that Richard's estoppel claim must fail.
 
 B.
 
 11
 Richard also contends that the Trustees breached their fiduciary duties when Lee advised the Schmidts, erroneously it turned out, that the beneficiary designation could be made on the "Pension or Vesting Application." Lee's misstatement, according to Richard, breached the Trustees' duty to provide plan participants with complete and accurate material information regarding their status and options under an ERISA plan.
 
 
 12
 In Anweiler v. American Elec. Power Serv. Corp., 3 F.3d 986, 991 (7th Cir.1993), we explained that "[f]iduciaries breach their duties of loyalty and care [when] they mislead plan participants or misrepresent the terms or administration of a plan." A plan fiduciary may violate its duties, we said, either by affirmatively misleading plan participants about the operations of a plan, or by remaining silent in circumstances where silence could be considered misleading. Id.; see also Chojnacki v. Georgia-Pacific Corp., 108 F.3d 810, 817 (7th Cir.1997). In this case, Richard contends that he and his father were affirmatively misled by Lee's directions for designating a death benefit beneficiary. The district court did not doubt that the Schmidts had been misled, but in granting summary judgment, the court focused on whether Lee's misstatement could be said to have breached the duties owed to plan participants by the Trustees themselves, as they were the only ERISA fiduciaries named as defendants in this case. We therefore turn to that question now.
 
 
 13
 It goes without saying that a claim for breach of fiduciary duty lies only against an individual or entity that qualifies as an ERISA "fiduciary." Plumb, at 853; Klosterman, 32 F.3d at 1122. And to be a fiduciary, the individual or entity involved must exercise a degree of discretion over the management of the plan or its assets, or over the administration of the plan itself. See 29 U.S.C. § 1002(21)(A) (defining "fiduciary"); see also Pohl, 956 F.2d at 129 ("ERISA makes the existence of discretion a sine qua non of fiduciary duty."). It is clear that Lee herself was not an ERISA fiduciary, as she merely performed ministerial and clerical functions relating to the administration of the Plan; she had no discretionary authority or control in the tasks she was assigned. See 29 C.F.R. § 2509.75-8, D-2 ("a person who performs purely ministerial functions ... for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary ..."); see also Klosterman, 32 F.3d at 1124-25 (claim administrator not a fiduciary). Indeed, Richard has not even made Lee's status an issue, as she is not named as a defendant. The Trustees alone are alleged to have breached their fiduciary duties, and given their discretionary authority over the management and administration of the Fund, we agree that they would qualify as ERISA fiduciaries. See 29 C.F.R. § 2509.75-8, D-3 (plan administrator or trustee necessarily a fiduciary under the Act).
 
 
 14
 Yet the Trustees did not make the misstatement on which Richard's fiduciary duty claim is based--Lee did. Significantly, no evidence suggests that the Trustees either authorized, participated in, or had knowledge of Lee's misstatement, or that the Trustees deliberately withheld information from Lee about the proper means of making a beneficiary designation. Cf. Varity Corp. v. Howe, --- U.S. ----, ---- - ----, 116 S.Ct. 1065, 1073-74, 134 L.Ed.2d 130 (1996) (plan administrator breached fiduciary duty when it communicated benefit options in a misleading fashion through individuals authorized to communicate as fiduciaries); In re Unisys Corp., 57 F.3d 1255, 1264-65 (3d Cir.1995) (breach of fiduciary duty claim established where company management consistently misrepresented plan terms, both orally and in writing, to all employees), cert. denied, --- U.S. ----, 116 S.Ct. 1316, 134 L.Ed.2d 470 (1996); Fischer v. Philadelphia Elec. Co., 994 F.2d 130, 134-35 (3d Cir.) (plan administrator may have breached fiduciary duty by failing to disclose to benefits counselors, who fielded calls from participants, that it was considering an early retirement plan), cert. denied, 510 U.S. 1020, 114 S.Ct. 622, 126 L.Ed.2d 586 (1993); Berlin v. Michigan Bell Tel. Co., 858 F.2d 1154, 1163-64 (6th Cir.1988) (breach of fiduciary duty claim will lie where plan administrator and individual fiduciary made misrepresentations to participants). Rather, this is a case in which the Trustees provided complete and correct information to participants both in the Plan itself and in the Plan Booklet only to have a ministerial employee make a negligent misrepresentation in response to a single question from a single participant. The district court concluded that absent evidence that the Trustees had participated in Lee's misstatement or had failed to exercise care in hiring her, the Trustees could not be said to have breached their fiduciary duties solely by virtue of Lee's misstatement. We believe that in general, the district court was correct, but we would add that the Trustees may also breach their fiduciary duties by failing to exercise care in training someone like Lee, or by retaining her in circumstances where they should know her performance to be inadequate. There is no evidence that the Trustees in this case were involved in any way with Lee's misstatement. Nor has Richard attempted to show that the Trustees failed to exercise due care either in hiring or retaining Lee, or in training her to respond to inquiries from plan participants. We therefore agree with the district court that Lee's misstatement would not in these circumstances support a breach of fiduciary duty claim against the Trustees.
 
 
 15
 We hasten to add, however, that our resolution of this case depends in large measure on the fact that the Trustees provided complete and accurate information in the Plan and Plan Booklet they distributed to all participants. Although ERISA fiduciaries do not necessarily satisfy their fiduciary obligations merely by complying with the disclosure requirements imposed by the statute (see Varity, --- U.S. at ---- - ----, 116 S.Ct. at 1073-74; In re Unisys Corp., 57 F.3d at 1264), we believe that the adequacy of the relevant disclosures in the written plan materials is an important consideration in a circumstance like this where a non-fiduciary agent subsequently provides erroneous information in response to a question from a single participant. Cf. Estate of Becker v. Eastman Kodak Co., 120 F.3d 5, 9-10 (2d Cir.1997) (defendant breached fiduciary duty to provide complete and correct information when its written materials were ambiguous on the relevant issue and a benefits counselor provided materially misleading information); Taylor v. Peoples Natural Gas Co., 49 F.3d 982, 987-89 (3d Cir.1995) (plan administrator breached fiduciary duty when its agent orally advised participants about possible changes in the plan when the fiduciaries had not communicated with participants in writing on the matter). If the written materials were inadequate, then the fiduciaries themselves must be held responsible for the failure to provide complete and correct material information in the event that a nonfiduciary agent provides misleading information. We are unwilling to conclude, however, that the fiduciaries also will be held responsible when their written disclosures were adequate, they had no involvement in communicating the misleading information, and there has been no showing that the fiduciaries failed to exercise due care in hiring, retaining, or training the non-fiduciary agent for the tasks assigned her. Cf. 29 C.F.R. § 2509.758, FR-11 ("A plan fiduciary may rely on information, data, statistics or analyses furnished by persons performing ministerial functions for the plan, provided that he has exercised prudence in the selection and retention of such persons."). Because that latter statement describes this case, we must affirm the summary judgment for the Trustees on Richard's breach of fiduciary duty claim.
 
 C.
 
 16
 Two issues remain, which we need touch on only briefly here. First, Richard contends that defendants violated 29 U.S.C. § 1133(2) by denying him a full and fair review of his claim to Allen's death benefit. We agree with the district court, however, that the notice provided to Richard of his appeal rights was adequate. There is no dispute, moreover, that Richard submitted to the Appeals Committee all of the materials in his possession that supported his claim to the death benefit. Richard thus has not established a violation of section 1133(2).
 
 
 17
 Defendants, finally, have filed a cross-appeal from the district court's denial of their motion for an award of attorney's fees under 29 U.S.C. § 1132(g)(1). The lower court concluded that defendants were not entitled to an award of fees because Richard's position in this litigation was substantially justified even if ultimately unsuccessful. See Little v. Cox's Supermarkets, 71 F.3d 637, 644 (7th Cir.1995) (ultimate test is whether the losing party's position was substantially justified). We review that conclusion on appeal only for an abuse of discretion (id.), and having conducted that review, we find no abuse of the district court's discretion here. We therefore affirm the district court's decision denying defendants an award of attorney's fees.
 
 III.
 
 18
 For the foregoing reasons, we agree with the district court that the NPF and its Board of Trustees were entitled to summary judgment on each of Richard Schmidt's claims. At the same time, however, we agree that Richard's litigation position was substantially justified and that defendants were therefore not entitled to an award of attorney's fees. No costs shall be awarded in this court.
 
 
 19
 AFFIRMED.
 
 
 
 [1]
 Lee's responsibilities as a benefit analyst included applying pension rules, requesting additional information from applicants, determining benefit amounts due under the plan, and responding to participants' inquiries about pension benefits
 
 
 [2]
 The summary included in the Booklet explains:
 Use the card attached in this booklet to name your beneficiary for this [death] benefit. File it with your local union after completion. The Plan does not accept any beneficiary card other than its own.
 If no Plan beneficiary card is filed with your local union, the Death Benefit will be paid to your legal spouse. If you have no spouse, it will be paid to your children.
 (R. 24, Ex. B, Plan Booklet at 13.)
 
 
 [3]
 That section provides that:
 If the Participant's primary and successor beneficiary or beneficiaries designated pursuant to Section 7.05 die prior to the death of the Participant, or if no beneficiary is designated in accordance with such Section, then any death benefit otherwise payable under this Section shall be paid in the following order: (i) to the Participant's spouse; (ii) if no spouse survives the Participant, to his children....
 (R. 24, Ex. B, Plan at § 7.01.) Section 7.05, in turn, which governs the designation of beneficiaries, provides that "[a]ll designations of beneficiaries shall be made in the form and manner required by the Trustees who shall be the sole judges of the validity thereof." (Id. at § 7.05.)
 
 
 [4]
 Because the Plan provides the Trustees with discretion in interpreting its terms (See Plan § 8.03), we would be required to defer to the Trustees' judgment unless we were to find it arbitrary and capricious. Chojnacki v. Georgia-Pacific Corp., 108 F.3d 810, 814 (7th Cir.1997)