**Albert C. McNAB, Barry L. Chapman, Michael D. Asher, Wilford Boyland, James Cugier, Luther Fowler, Linda J. Goers, James W. Harris, Frederick R. Hales, Gary L. Marshall, Carl R. Schmid, James P. Vojir, Nicholas G. Schmutte, Paul E. Nordmeyer, Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Finance Committee of the Board of Directors of General Motors Corporation, Defendants.**

No. IP 94–1560 C B/S.

United States District Court,
S.D. Indiana
Indianapolis Division.

Dec. 5, 1997.

Raymond J. Hafsten, Jr., Indianapolis, IN, for Plaintiff.

David M. Davis, Birmingham, MI, for Defendant.

### ENTRY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BARKER, Chief Judge.

This matter comes before the Court on Defendants' Motion for Summary Judgment on Plaintiffs' Employee Retirement Income Security Act of 1974 ("ERISA") claims that Defendants (1) arbitrarily and capriciously denied Plaintiffs early retirement benefits, (2) breached their fiduciary duty by failing to notify Plaintiffs of amendments to the early retirement plan, and (3) engaged in unlawful discrimination by denying Plaintiffs participation in the early retirement plan. For the reasons explained below, Defendants' Motion for Summary Judgment is GRANTED on all three claims.

### FACTS

This case stems from events surrounding the sale of General Motors' Allison Gas Turbine Division ("AGT") in Indianapolis, Indiana. Plaintiffs were former salaried employees of General Motors ("GM") at AGT, but lost their status as GM employees as a result of the sale. Mowers Aff. ¶ 3. Although Plaintiffs normally could have attempted to transfer to stay within the company, AGT employees were prohibited from transferring once the plant had been identified as a division to be sold. *Id.* at ¶ 40. The sale was effective December 1, 1993, after which time the plant continued business as the Allison Engine Company ("AEC"), and Plaintiffs became employees of AEC. *Id.* at ¶ 4.

During Plaintiffs' employment with GM, the corporation had a standard retirement program for its salaried employees known as the GM Retirement Program. *Id.* at ¶ 5. Under the program, employees were eligible to commence retirement with the immediate payment of monthly benefits if they separated from service upon attainment of age 55 with completion of ten (10) or more years of credited service, at any age after the completion of thirty (30) years of credited service, or upon attainment of age 65. *Id.* at ¶ 6. In addition, on January 15, 1992, GM adopted the 1992 Corporate Window Program for Salaried Employees ("Window One") in an attempt to reduce GM's salaried work force without involuntary separations and layoffs. *Id.* at ¶¶ 10, 11. Under Window One, eligible employees age 53, or those who would be age 53 by December 31, 1993, could receive retirement benefits without actuarial reduction for age or reduction for post-retirement earnings. *Id.* at 12.

Not every GM salaried employee who met the requisite age and service requirements was allowed to participate in Window One. *Id.* at ¶ 13. GM management could offer participation to selected salaried employees, or alternatively, salaried employees could approach management to express an interest in participating. *Id.* However, participation always had to be approved by the GM Management Committee, with the critical inquiry being "whether or not it is in GM's best interest to place an employe's [sic] name on the candidate list for a window retirement." *Id.* AGT management was advised to submit candidates for Window One participation to the GM Management Committee on or before March 11, 1992, after which the Committee reviewed the candidates submitted and made the final decision regarding participation. *Id.* at ¶ 15.

On November 2, 1992, GM implemented another version of Window One, labeled the Supplemental Window Salaried Separation Program ("Window Two"). *Id.* at ¶ 17. Its terms were the same as Windows One except that eligibility was extended to employees who would reach age 50 by December 31, 1992. *Id.* at ¶ 18. Under Window Two, management was called upon to submit candidates to the Management Committee for review by November 19, 1992. *Id.* at ¶ 22.

Each of the Plaintiffs met the age and service requirements of Window One and Window Two (hereinafter collectively know as "Windows"), but AGT management refused to recommend their participation.[1] *Id.*

---

1. Both parties acknowledge that Plaintiff James Cugier is no longer part of this case and that he participated in Windows.

at ¶ 24. Appealing to upper-management, ten of the fourteen Plaintiffs submitted letters to G.A. Knechtel, Vice–President of GM, acknowledging that management's stated reasons for refusing to allow them to participate in Windows were that Plaintiffs were too valuable to GM.[2] *Id.* at ¶ 25; Defendants' Exhibit C.

David Mowers, GM Director of Policy Development and Employee Relations, reviewed the claims of each of the ten Plaintiffs. *Id.* at ¶ 26. Mowers requested and received from each of their managers an explanation of the reasons for not recommending Plaintiffs. *Id.* Each manager noted that the decision not to recommend rested on what was best for the company and, in most cases, the manager determined that the employee was very valuable to the company. Exhibit D of Mower's Affidavit. Mowers told Plaintiffs that the best interests standard was used to determine whether an employee was allowed to participate in Windows and, based on that standard, Plaintiffs were properly denied participation. Exhibit E of Mower's Affidavit.

The GM Management Committee had delegated authority to the Employee Benefits Plans Committee ("EBPC"), whose decision was to be the final step in appealing management's recommendation to deny an employee Windows participation. Mowers Aff. ¶ 32; Defendants' Exhibits G, H. EBPC's review of Plaintiffs' claims resulted in an affirmance of management's recommendation to deny Plaintiffs' Windows participation. Mowers Aff. ¶ 34. In coming to its conclusion, EBPC relied, in part, on a management report containing management's reasons for not recommending Plaintiffs' participation in Windows, including the statement that "[t]he primary reason given to [Plaintiffs] was they were needed to continue the operation, pending sale of the unit to another company." Exhibit I of Mower's Affidavit. Having exhausted their administrative appeals, Plaintiffs commenced this action on October 24, 1994.

## SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.Pro. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a jury to return a verdict in favor of the nonmoving party on the particular issue. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Methodist Med. Ctr. v. American Med. Sec. Inc.,* 38 F.3d 316, 319 (7th Cir.1994).

In resolving a motion for summary judgment, a court must draw all reasonable inferences in the light most favorable to the non-movants. *Patel v. Allstate Ins. Co.,* 105 F.3d 365, 366 (7th Cir.1997); *Spraying Sys. Co. v. Delavan, Inc.,* 975 F.2d 387, 392 (7th Cir. 1992). However, we must not "ignore facts in the record merely because they are unfavorable.... [A non-movant] gets the benefit of the doubt only if the record contains competent evidence on both sides of a factual question." *Patel,* 105 F.3d at 366. Thus, if genuine doubts remain, and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *Shields Enters., Inc. v. First Chicago Corp.,* 975 F.2d 1290, 1294 (7th Cir.1992); *Wolf v. City of Fitchburg,* 870 F.2d 1327, 1330 (7th Cir.1989).

## DISCUSSION

Plaintiffs assert three claims, all arising under ERISA: that Defendants (1) arbitrarily denied Plaintiffs participation in Windows, (2) breached their fiduciary duty by failing to notify Plaintiffs of amendments to Windows, and (3) engaged in unlawful discrimination by denying Plaintiffs participation in Windows.

## I) DENIAL OF BENEFITS CLAIM

■ Plaintiffs allege that they were entitled to participate in Windows, but that Defendants arbitrarily refused to allow them to participate. Plaintiffs attempt to rely on Section 510 of ERISA in support of their denial of benefits claim. *See* Plaintiffs' Re-

---

**2.** The ten Plaintiffs included Michael Asher, Wilford B. Boyland, Luther C. Fowler, Linda J. Goers, Frederick R. Hale, James W. Harris, Albert C. McNab, Gary Marshall, Carl R. Schmid, and Nicholas G. Schmutte. Defendants' Exhibit C.

sponse to Defendants' Motion for Summary Judgment at 28. However, "[s]ection 510 applies only in instances in which an employer wrongfully alters the employment relationship to prevent benefit rights from vesting." *Andersen v. Chrysler Corp.*, 99 F.3d 846, 856 (7th Cir.1996). Section 502(a)(1)(B) provides a remedy to an employee entitled to benefits under a plan but does not receive them for any reason, malicious or not. *See Teumer v. General Motors Corp.*, 34 F.3d 542, 545 (7th Cir.1994). To the extent that Plaintiffs allege a non-malicious denial of benefits, their claim arises under Section 502(a)(1)(B), not Section 510. *See id.*

■ Both parties agree that the EBPC has discretionary power to interpret and apply Windows and that the EBPC's decision to deny Plaintiffs participation in Windows should be reviewed under the arbitrary and capricious standard. *See* Defendants' Motion for Summary Judgment at 19; Plaintiffs' Response at 27. Indeed, the Court must apply the arbitrary and capricious standard when reviewing a plan administrator's decision on a plan, such as Windows, where discretion has been vested in that administrator. *See Dade v. Sherwin–Williams Co.*, 128 F.3d 1135 (7th Cir.1997). This standard does not require the EBPC's decision to be the only sensible application of the plan, so long as its decision "offers a reasoned explanation, based on the evidence, for a particular outcome." *Krawczyk v. Harnischfeger Corp.*, 41 F.3d 276, 278 (7th Cir.1994) *quoting Pokratz v. Jones Dairy Farm*, 771 F.2d 206, 209 (7th Cir.1985).

■ "Uniform interpretation and application of plan rules are important factors in deciding whether a denial of benefits is arbitrary and capricious." *Russo v. Health, Welfare & Pension Fund, Local 705, International Brotherhood of Teamsters*, 984 F.2d 762, 766 (7th Cir.1993); *see also Krawczyk v. Harnischfeger Corp.*, 41 F.3d 276, 279 (7th Cir.1994). To prove that Windows lacked uniform application, Plaintiffs must establish that employees similarly-situated to them were treated differently under the plan. *See Fuller v. CBT Corp.*, 905 F.2d 1055, 1060 (7th Cir.1990); *Lewis v. Pneumo Abex Corp.*, No. 93–C–3536, 1994 WL 178457 (N.D.Ill. May 9, 1994). Courts have been reluctant to hold that employees were similarly-situated unless the employees were in "materially indistinguishable" circumstances. *Id.; see Morse v. Stanley*, 732 F.2d 1139, 1144 (2nd Cir.1984); *Spencer v. Central States, Southeast and Southwest Areas Pension Fund*, 778 F.Supp. 985, 996–97 (N.D.Ill.1991).

Plaintiffs contend that Defendants did not apply Windows uniformly, resulting in an arbitrary and capricious denial of benefits to Plaintiffs. Defendants rejoin that its eligibility determinations were uniformly governed by what was in the "best interests of management" and that denying Windows participation to valuable employees, like Plaintiffs, was in management's best interests because it allowed the plant to be sold as an ongoing concern with an intact, viable work force.

■ As a threshold matter, Defendants move to strike documents not presented to the EBPC when it decided Plaintiffs' administrative appeal, contending that the Court must consider only evidence presented to the plan administrator. Plaintiffs respond that the evidence which Defendants seek to strike is relevant and admissible to the extent that it goes to the uniformity of Windows' application.

Determining the uniformity of Windows' application is plainly relevant to whether Plaintiffs were denied participation arbitrarily and capriciously. *See Russo*, 984 F.2d at 766. Recognizing the relevancy of a plan's uniform application, courts have consistently admitted such evidence regardless of whether it was considered by the plan administrator. *See Fuller v. CBT Corp.*, 905 F.2d 1055, 1060 (7th Cir.1990); *Sly v. P.R. Mallory & Co., Inc.*, 712 F.2d 1209, 1213 (7th Cir.1983). Accordingly, Defendants' Motion to Strike Certain of Plaintiffs' Exhibits Contained in Appendix 2 is DENIED.

Plaintiffs present, in rather ad hoc fashion, evidence purporting to demonstrate a lack of uniformity in Defendants' application of Windows. The evidence consists of examples of alleged inconsistent applications of Windows and can be grouped in two categories: (1) examples of valuable employees allowed to participate in Windows, and (2) examples of managers who used age-related criteria or no criteria at all when recommending Windows participants.

■ The first category includes evidence of AGT executives who participated in Windows despite being clearly valuable to GM. Plaintiffs maintain that their retirements were not in the best interests of management and that their treatment was inconsistent with that afforded other valuable employees, like Plaintiffs. Defendants rejoin that these executives were not similarly-situated to Plaintiffs and that their participation in Windows was indeed in the company's best interests. Specifically, GM wanted the non-plaintiff executives to be part of a transition team so that plant operations would continue to run smoothly as the plant was transferred to AEC ownership. To ensure that the executives would not be lured away by competitors, Defendants offered to allow them to retire under Windows so long as they would continue to work as consultants on the transition team. The executives accepted that proposal, retired, but continued to work as part of the transition team, thus allowing plant operations to continue during the course of the sale. Defendants did not believe that providing the same arrangements to lower-level employees would be necessary to retain them and, consequently, certain valuable lower-level employees, like Plaintiffs, were not allowed to participate in Windows.

Allowing the executives to participate in Windows "does not mean that [Defendants] donned a discretionary strait-jacket which held them bound to grant [participation] in all cases as a matter of course. On the contrary, the Plan gave them broad discretion to evaluate requests for [participation in Windows] on a case by case basis." *Morse v. Stanley*, 732 F.2d at 1144. The EBPC's decisions, so long as they were not arbitrary and capricious, were otherwise within their discretion. *See Morton v. Smith*, 91 F.3d 867, 870 (7th Cir.1996). The executives and Plaintiffs were clearly in "materially distinguishable" circumstances, and Defendants had to make determinations in light of those differences. Defendants' decision to allow the executives to retire under Windows, while denying participation to Plaintiffs, was based on a permissible assessment of the company's best interests and does not establish that Plaintiffs' denials were arbitrary and capricious.

■ Plaintiffs also present evidence of non-executive AGT employees who retired under Windows and who then were hired by AEC after the sale. Plaintiffs contend that AEC's hiring of these employees indicates that they were allowed to participate in Windows despite being valuable to GM.

Plaintiffs' assumption that employees hired by AEC after the sale were also valuable to GM at the time Windows participation was determined is not necessarily valid. Although GM sold the plant as an ongoing concern, it was not sold with a full work force. Indeed, it was not in GM's interests to retain full employment at the plant; it simply needed to provide AEC with a viable work force. That AEC hired some Windows retirees does not illustrate that those employees were allowed Windows retirement despite being valuable to GM. These employees reasonably could have been determined not to be valuable to GM at the time of Windows, but were hired later by AEC simply to fill out its employment force. This conclusion is supported by the fact that AEC hired back most of these employees in a different capacity than what they held when they worked for GM, some even returning as temporary workers or consultants, suggesting that retention of these employees in their original positions would likely have been unnecessary in providing AEC with a viable work force.

■ Assuming *arguendo* that it was in GM's interest not to have allowed these employees to participate in Windows, Plaintiffs still fail to establish that the best interests standard was not applied uniformly when evaluating these employees. Although over time GM's assessments may have proven to be unwise or inaccurate, that outcome does not establish that the decisions were not based on a proper application of the best interests standard. The bottom line is that Plaintiffs have failed to produce evidence that Windows participation decisions were made on a basis other than the best interests standard. Indeed, the accuracy of the assessments is wholly irrelevant to Plaintiffs' case so long as the best interests standard was applied uniformly.

■ The second category of Plaintiffs' evidence includes allegations that some AGT

managers used age-related criteria or no criteria at all in recommending employees for Windows. Specifically, Plaintiffs allege that S. Michael Hudson ("Hudson"), then-Director of Engineering at AGT, recommended participation in Windows for anyone in his department who wanted it, without regard to the best interests standard. Plaintiffs, however, fail to support this assertion with any specific citation to the record and, as is well-known, a bald, conclusory assertion is insufficient to withstand summary judgment. *See Northern Assurance Co. of America v. Summers,* 17 F.3d 956, 961 (7th Cir.1994). Furthermore, assuming Hudson's decisions were in fact flawed in this fashion, Plaintiffs fail to demonstrate that the best interests standard was not used by the EBPC in making its final decisions regarding Hudson's recommendations.

■■■■ Plaintiffs next allege that Calvin Emmerson ("Emmerson"), then-Chief Engineer of Test and Controls at AGT, recommended employees for Windows on the basis of age and seniority, without regard to the best interests standard. A minimum number of employees in most departments had to be retained in order to provide AEC with a viable work force and Emmerson's department was no exception. Accordingly, the best interests of GM required that Emmerson not recommend participation in Windows by all those in his department who were qualified. Recognizing this, Emmerson used age and seniority to decide who to recommend among those qualified. There is no evidence that this criteria was not objectively and uniformly applied by Emmerson to his department or that his method was unreasonable. Plaintiffs clearly fail to demonstrate how Emmerson's recommendations were inconsistent with the best interests standard.[3] Furthermore, none of Plaintiffs were even in Emmerson's department.

■ ■■■ Windows was implemented to provide an incentive for some salaried workers to retire early. It was not intended to be made available to *any* salaried employee who met the age and service requirements. Accordingly, the plan gave discretion to the EBPC to allow participation only in situations where it would be in the best interests of management. The evidence establishes that this principle was uniformly applied to Defendants' participation decisions and guided the decisions to deny Plaintiffs' participation in Windows. Accordingly, Defendants' Motion for Summary Judgment on Plaintiffs' denial of benefits claim is GRANTED.

## II) BREACH OF FIDUCIARY DUTY CLAIM

■■■■ Plaintiffs also contend that Defendants breached their fiduciary duty by failing to notify Plaintiffs of amendments to Windows. Defendants respond that amending Windows was a matter of plan design, not subject to review under fiduciary standards.[4]

---

3. Plaintiffs also cite as evidence of arbitrariness in Windows' application the fact that Defendants inadvertently refused to allow James Cugier to participate in Windows and that it was not until Defendants' error was uncovered in the course of this case's discovery that he was permitted to participate. Defendants concede as much, but maintain that the error does not demonstrate that the system was implemented in an arbitrary manner. Windows involved thousands of employees and endless paperwork and occasional human error was almost inevitable. Clearly, the fact that one employee was not initially permitted to participate in Windows despite being approved to do so, does not demonstrate that Windows was applied arbitrarily as a whole or as to Plaintiffs.

4. Plaintiffs move to strike the portion of Defendants' Reply Brief pertaining to Plaintiffs' breach of fiduciary duty claim, alleging that Defendants failed to raise the fiduciary duty claim in its original motion for summary judgment and brief in support thereof. However, Defendants' Memorandum in Support of Summary Judgment did address the fiduciary duty issue at pages 1, 2, 20, and 25. Accordingly, Plaintiffs' motion is DENIED and Plaintiffs' request to file an additional brief addressing fiduciary duty is also DENIED.

Plaintiffs also move to strike Defendants' Summary Judgment Reply Brief for exceeding the 20–page limit for reply briefs. *See* Local Rule 7.1(b). Plaintiffs acknowledge that Defendants' consolidated brief, containing their Reply Brief and Memorandum in Support of its Motion to Strike, is permitted to total 55–pages; 20–pages for the Reply Brief and 35–pages for the Memorandum in Support of its Motion to Strike. Plaintiffs correctly point out, however, that Defendants used approximately 25–pages for its Reply Brief, violating the 20–page limit. The Court has the discretion to strike the excess pages but, in this case, such a result would be unjust. Defendants were replying to Plaintiffs' Response Brief, which included mis-numbered and upside

"A plan fiduciary may violate its duties ... either by affirmatively misleading plan participants about the operations of a plan, or by remaining silent in circumstances where silence could be considered misleading." *Schmidt v. Sheet Metal Workers' National Pension Fund,* 128 F.3d 541, (7th Cir.1997); *see also Varity Corp. v. Howe,* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Plaintiffs in the instant case allege that Defendants breached their fiduciary duty by failing to notify Plaintiffs that the stated Windows deadline could be extended and that all valuable employees were not denied participation.

Plaintiffs do not dispute that copies of the Windows plan were distributed or that the plan provided for specific sign-up deadlines. Instead, they allege that the written deadlines were modified by Defendants' failure to enforce the deadline absolutely and that Defendants then breached their fiduciary duty by not informing Plaintiffs of that modification. Plaintiffs' evidence consists of their assertion that Robert Hunter, an employee at AGT, was allowed to sign-up for Windows after the deadline. Plaintiffs fail to muster any evidence in support of this assertion (no affidavit, no deposition testimony, etc.) and, as previously discussed, bald assertions are insufficient to withstand a motion for summary judgment. *See. Northern Assurance Co. of America v. Summers,* 17 F.3d at 961.

Again, assuming *arguendo* that Plaintiffs had substantiated this assertion, the allowance of one late sign-up after the written deadline does not constitute a modification of the plan. Courts are reluctant to find modifications of written ERISA-governed plans, and we find no reason here for an exception. *See Doe v. Blue Cross & Blue Shield United of Wisconsin,* 112 F.3d 869, 876 (7th Cir. 1997). A single extension of the deadline for a single employee clearly is not behavior which constitutes a modification of a written early retirement plan covering thousands of employees. Accordingly, we hold that the Win-

dows' deadline was not modified and Defendants did not breach their fiduciary duty.

Plaintiffs also claim that Windows was amended when Defendants permitted some valuable employees to participate and that Defendants then breached their fiduciary duty by failing to notify Plaintiffs of that amendment. This argument simply re-states Plaintiffs' denial of benefits claim. Plaintiffs fail to demonstrate that allowing some valuable employees to participate in Windows is inconsistent with or amends the plan's terms. In fact, as previously discussed in Plaintiffs' denial of benefits claim, allowing some valuable employees to participate in Windows was deemed to be in the best interests of GM and therefore was faithful to the terms of the plan. Clearly, allowing valuable employees to participate in Windows did not modify or amend the plan. Accordingly, we conclude that Defendants did not breach their fiduciary duty and Defendants' Motion for Summary Judgment on Plaintiffs' breach of fiduciary duty claim is GRANTED.

### III) DISCRIMINATION CLAIM

Plaintiffs' final claim is that Defendants engaged in unlawful discrimination, in violation of Section 510 of ERISA, by denying Windows participation to Plaintiffs. Defendants maintain that they had no discriminatory intent when they denied Plaintiffs Windows participation and that Plaintiffs' discrimination claim does not arise out of an adverse employment action. Plaintiffs fail to dispute Defendants' contentions in this respect in their Response to Defendants' Motion for Summary Judgment.

Section 510 of ERISA provides:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan....

down pages, rare citations to evidence, and innumerable grammatical and spelling errors. To adequately respond to such a brief, Defendants used additional pages simply to organize and clarify the issues. Although the Court does not condone exceeding page limitations, in this case,

the Court opts not to strike the excess pages. Therefore, Plaintiffs' motion to strike is DENIED. Indeed, even if we struck the excess pages, this entry and our holdings would remain unchanged.

29 U.S.C. § 1140. "Section 510 applies only in instances in which an employer wrongfully alters the employment relationship to prevent benefit rights from vesting." *Andersen v. Chrysler Corp.*, 99 F.3d 846, 856 (7th Cir. 1996). In their Response to Defendants' Motion for Summary Judgment, Plaintiffs fail to make any distinction between their denial of benefits claim and their discrimination claim and never allege that Defendants wrongfully altered their employment relationship to prevent benefit rights from vesting. Rather, Plaintiffs simply allege that the denial of benefits constituted unlawful discrimination, without anything more. This deficiency is fatal to Plaintiffs' discrimination claim; any wrongful denial of benefits, even if made in bad faith, did not affect Plaintiffs' employment status and therefore does not form a basis for a § 510 violation. *See Teumer v. General Motors Corp.*, 34 F.3d 542, 545 (7th Cir.1994).

The only adverse employment action that Plaintiffs note is GM's decision to prohibit AGT employees from transferring within GM once the plant had been identified as a division to be sold. However, Plaintiffs never allege that the prohibition constituted unlawful discrimination. Instead, the prohibition was merely stated as background information in their Complaint and Response to Defendants' Motion for Summary Judgment.

Even if Plaintiffs had alleged that the transfer prohibition constituted unlawful discrimination, the discrimination claim would fail. To recover under Section 510, Plaintiffs must show that the employer wrongfully altered the employment relationship with the specific intent to interfere with their ERISA rights. *See Teumer*, 34 F.3d at 550. Plaintiffs may satisfy this burden either by presenting direct evidence of interference with their protected benefits or by utilizing the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Salus v. GTE Directories Service Corp.*, 104 F.3d 131, 135 (7th Cir.1997); *Grottkau v. Sky Climber, Inc.*, 79 F.3d 70, 73 (7th Cir.1996). Plaintiffs here must rely on the burden-shifting approach because no direct evidence has been presented. Thus, Plaintiffs must establish a prima facie case of interference by demonstrating that they (1) belong to the protected class; (2) were qualified for their jobs; and (3) suffered an adverse employment decision under circumstances that provide some basis for believing that the prohibited intent to interfere was present. *Id.* Once Plaintiffs establish a prima facie case of interference, the burden shifts to Defendants to offer a legitimate, non-discriminatory reason for the challenged employment action. *Id.* If Defendants present a legitimate reason, the burden shifts back to Plaintiffs to demonstrate that the proffered explanation is pretext and that the motivating factor behind the adverse employment action was the specific intent to interfere with Plaintiffs' ERISA rights. *Meredith v. Navistar Int'l Transp. Co.*, 935 F.2d 124, 127 (7th Cir.1991); *see also Salus*, 104 F.3d at 135.

Defendants state that they prohibited transferring in an effort to retain a viable workforce for AEC. This is a legitimate, non-discriminatory reason, the effect of which shifts the burden to Plaintiffs to show pretext. To survive summary judgment, Plaintiffs were required to produce evidence sufficient to create an issue of fact as to whether Defendants' proffered non-discriminatory reasons are pretext. *See Grottkau*, 79 F.3d at 73. Plaintiffs, however, fail to show pretext, offering instead isolated examples of employees permitted to transfer (with rare citations to the record, by the way). At best, such evidence demonstrates that while some employees apparently circumvented the prohibition, Defendants' proffered reason for the transfer prohibition was nonetheless valid. Accordingly, Defendants stated purpose for restricting transfer, to wit, that it wanted to be able to sell AGT as an ongoing concern and provide AEC with a viable work force, suffices to defeat Plaintiffs' claim. Therefore, Defendants' Motion for Summary Judgment on Plaintiffs' discrimination claim is GRANTED.

## CONCLUSION

We have held that Defendants' Motion to Strike evidence not considered by the plan administrator must be DENIED, but Defendants' Motion for Summary Judgment on Plaintiffs' denial of benefits claim must be GRANTED because Defendants' decision not to allow Plaintiffs to participate in Windows was not arbitrary and capricious. Defen-

dants' Motion for Summary Judgment on Plaintiffs' breach of fiduciary duty claim must also be GRANTED because Defendants did not have a duty to inform Plaintiffs that the Windows deadline could be extended or that some valuable employees could participate in Windows. Finally, Defendants' Motion for Summary Judgment on Plaintiffs' discrimination claim must be GRANTED because Plaintiffs failed to allege a wrongful alteration of their employment relationship and failed to establish that Defendants' legitimate, non-discriminatory reason for prohibiting transfer was pretext.