Robert F. GROTTKAU, individually and on behalf of the Sky Climber Employees' 401(k) Profit–Sharing Plan, Plaintiff–Appellant,

v.

SKY CLIMBER, INC., a Washington corporation, Roger K. Morrison, an individual, and John A. Candler, an individual, Defendants–Appellees.

No. 95–2132.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 27, 1995.

Decided March 20, 1996.

Edwin C. Thomas, III (argued), Douglas C. Chalmers, Bell, Boyd & Lloyd, Chicago, IL, for plaintiff-appellant.

Gary R. Kessler, Stuart, Irvin, Stanford & Kessler, Christopher E. Parker (argued), Benton J. Mathis, Jr., Drew, Eckl & Farnham, Atlanta, GA, Quinton F. Seamons, Wilson & McIlvaine, Chicago, IL, for defendants-appellees.

Before POSNER, Chief Judge, BAUER and DIANE P. WOOD, Circuit Judges.

BAUER, Circuit Judge.

Robert Grottkau appeals the district court's entry of summary judgment in favor of Sky Climber, Inc. Grottkau sued Sky Climber, alleging that it had violated ERISA, 29 U.S.C. §§ 1001 et seq., and then fired him in retaliation for complaining about those ERISA violations. Grottkau also raised a variety of state law claims against Sky Climber and two executives of the company. Grottkau's appeal is limited to his ERISA retaliation claim against the company. We affirm.

**I**

Sky Climber sells, rents and maintains moveable scaffolding. Its principal place of business is in Stone Mountain, Georgia. Grottkau managed Sky Climber's Chicago branch office from November 3, 1987 through June 2, 1993. As manager, Grottkau supervised six employees and was responsible for enforcing Sky Climber's personnel policies and procedures. Sky Climber maintained a 401(k) profit sharing plan in which Grottkau participated. Grottkau's monthly contributions were deducted from his salary automatically. Sky Climber contributed a matching amount. In mid-March 1993, Grottkau received his 401(k) statement for the fourth quarter of 1992. The statement revealed that Sky Climber had not made its matching contributions for that quarter. Sky Climber had experienced financial difficulties in the last quarter of 1992 and into 1993. As a result of cash flow problems, executives had decided to delay making 401(k) matching contributions.

Grottkau contacted the Illinois Department of Labor which advised him to send a registered complaint letter to the plan administrator. Grottkau also spoke with other Sky Climber employees, including his direct supervisor, Mike Fisher, about the missing payments. Fisher encouraged Grottkau to send the complaint letter. On April 1, 1993, Grottkau sent such a letter to Robert Morrison, Sky Climber's Chief Financial Officer

and a plan trustee. Fisher and several other employees also complained to Morrison, although only Grottkau complained in writing. On April 22, 1993, Morrison sent a memorandum about the missing contributions to all Sky Climber employees. The memorandum indicated that the company would make up for all the missed contributions with interest. Over the next several weeks Sky Climber began to do so. On May 26, 1993, Morrison distributed another memorandum with checks enclosed for the investment income "lost during the time period in which your funds were not promptly invested in the 401(k) program."

According to Grottkau, Sky Climber discharged him in early June 1993 because of his written complaint and because he had contacted the Illinois Department of Labor. However, 401(k) shortages were not the only shenanigans occurring at Sky Climber.

In May 1993, Scott Billish, a sales representative in the Chicago office managed by Grottkau, called John Fields, the national sales director, and told him that Bill Gersch, the shop foreman in Chicago, was performing duties at the office on behalf of an unrelated company called Choice Rentals. According to Billish, Grottkau permitted Sky Climber employees to do Choice Rentals work on company time. In addition, Sky Climber customers had complained to Billish about work being done on behalf of Choice Rentals. Billish further reported that Grottkau had granted the employees an additional unauthorized week of vacation during the holiday season. In fact, Grottkau distributed a memorandum that stated in pertinent part:

> If Stone Mountain [corporate headquarters] calls for someone who is not in the office [because of the unauthorized vacation schedule], the typical answer should be—out on job site, errand or delivery etc.

Not surprisingly, this report displeased executives at the corporate headquarters who immediately began to investigate. First, Fields contacted another Chicago sales representative who confirmed the report. Next, Sky Climber sent Fields and Morrison to Chicago to investigate further. They interviewed all of the employees, none of whom contradicted the initial reports. Grottkau acknowledged that he permitted Sky Climber facilities to be used for Choice Rentals business. He also admitted granting unauthorized vacation and directing employees to lie to corporate headquarters. After the investigation, Sky Climber fired Grottkau for "misuse of company property."[1]

The district court found that Grottkau satisfied the prima facie case for his ERISA retaliation claim, but granted summary judgment for Sky Climber because Grottkau could not establish that Sky Climber's given reason for his discharge was a pretext.

## A. Standard of Review

We review the grant of summary judgment de novo, applying the same standards as the district court. *Illinois Conf. of Teamsters and Employers Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1364 (7th Cir.1995). We will affirm a grant of summary judgment only if no reasonable jury would render a verdict for the non-moving party "if the record at trial were identical to the record compiled in the summary judgment proceeding." *CSX Transp., Inc. v. Chicago & North Western Transp. Co., Inc.*, 62 F.3d 185, 188 (7th Cir.1995) (citations omitted). We view the record and all reasonable inferences to be drawn from it in the light most favorable to the non-moving party. *Steve Gilbert Trucking*, 71 F.3d at 1364.

## B. Liability

Section 510 of ERISA, 29 U.S.C. § 1140, states in pertinent part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

1. Sky Climber also discharged Gersch, the Chicago employee who ran Choice Rentals out of the Sky Climber office.

Where a plaintiff cannot point to direct evidence of discrimination, he may proceed via the familiar burden-shifting analysis of *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under *McDonnell Douglas*, a plaintiff first must establish a prima facie case of discrimination. If the plaintiff does so, the burden shifts to the defendant to offer a legitimate and non-discriminatory reason for the employment action. If the defendant makes this showing, the burden shifts back to the plaintiff to show that the defendant's proffered reason was a pretext. *Little v. Cox's Supermarkets*, 71 F.3d 637, 642 (7th Cir.1995), citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–08, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993).

 In order to make out a prima facie case under section 510, the plaintiff must show that he (1) belongs to the protected class; (2) was qualified for his job position; and (3) was discharged or denied employment under circumstances that provide some basis for believing that the prohibited intent to retaliate was present. *Little*, 71 F.3d at 642, citing *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 347 (3d Cir.1990) (citation omitted). Both parties agree that Grottkau satisfied the first two elements. The parties' dispute centers on the third element and the issue of pretext.

 The district court believed that Grottkau satisfied the third element of the prima facie case by a slim margin. While we acknowledge that the question is close, we need not reach it because we agree with the district court's conclusion that Grottkau failed to raise a genuine issue of fact as to whether Sky Climber's reasons for the discharge were pretextual. See *Sample v. Aldi, Inc.*, 61 F.3d 544, 548 (7th Cir.1995). "Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant." *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983).

To survive summary judgment, Grottkau needed to produce evidence that created an issue of fact as to whether Sky Climber's proffered non-discriminatory reasons for his discharge were pretextual. *Sample*, 61 F.3d at 549. He did not. Initially, we note that Grottkau admits that he allowed his supervisees unauthorized vacation time and instructed them to lie about it to the corporate headquarters. We have no doubt that these actions alone, leaving aside allowing another business to operate in Sky Climber's offices, would have justified Grottkau's discharge. Nevertheless, Grottkau argues that both reasons were pretextual because Sky Climber's investigation was a sham and because Sky Climber at times has articulated different reasons for his discharge.

As for the latter argument, we agree with the district court that the fact that Grottkau's termination letter did not specifically mention the unauthorized vacation issue does not mean that it was not a reason behind his termination. Likewise, we also think that granting unauthorized vacations was subsumed within the broader principle of 'misuse of company property.' Finally, we agree with the district court that Sky Climber's investigation was not a sham. Grottkau does not dispute the allegations that led to the investigation. He does not deny that Billish's call sparked the investigation. He does not dispute that Sky Climber executives confirmed Billish's accusations with another salesman or that a copy of Grottkau's vacation memo was faxed to corporate headquarters on May 26, 1993. Instead, Grottkau relies on an alleged factual dispute about the exact date Sky Climber made the decision to discharge him. There is some minor confusion about this in the record, but there is ample undisputed evidence to show conclusively that the investigation was not a sham.

Grottkau was not the only Sky Climber employee to complain about the late 401(k) contributions. His direct supervisor also complained and encouraged Grottkau to complain in writing. It is true that Grottkau was the only Sky Climber employee to make a written complaint and to "go outside" of the company to the Illinois Department of Labor. However, Sky Climber responded to the 401(k) complaints by making up the missed payments with interest in a relatively short period of time. There is no evidence that

Grottkau's complaints about the 401(k) plan were a factor in the conduct of the investigation or that the reasons given for his discharge were bogus. The sincerity of Sky Climber's concern about the Choice Rental shenanigans and the vacation issue is buttressed by its decision to fire both Grottkau and Gersch. In short, Grottkau cannot show that Sky Climber's proffered reasons for his discharge were only a pretext for an unlawful retaliatory discharge.

## CONCLUSION

For the foregoing reasons, we affirm the district court's grant of Sky Climber's motion for summary judgment.

AFFIRMED.