Diane L. LINDEMANN,
Plaintiff–Appellant,

v.

**MOBIL OIL CORPORATION,**
Defendant–Appellee.

No. 96–3930.

United States Court of Appeals,
Seventh Circuit.

Argued May 22, 1997.

Decided March 26, 1998.

Frank P. Tighe, III (argued), Oak Brook, IL, for Plaintiff–Appellant.

Patrick J. Ahern (argued), Baker & McKenzie, Chicago, IL, for Defendant–Appellee.

Before COFFEY, EASTERBROOK and ROVNER, Circuit Judges.

COFFEY, Circuit Judge.

The plaintiff-appellant, Diane L. Lindemann, brought a wrongful termination action against her former employer, the Mobil Oil Corporation ("Mobil"), alleging that Mobil terminated her employment in violation of section 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140. Mobil filed a motion for summary judgment, and the court granted the same on September 23, 1996. The court also denied Lindemann's motion for partial summary judgment on issues relating to Mobil's liability. On October 23, 1996, the court denied Lindemann's Rule 59 motion for reconsideration based upon newly issued case law, and granted her an extension for filing an appeal. Lindemann appeals and we affirm.

## I. BACKGROUND

Lindemann joined Mobil in 1977 and worked as an inventory control analyst at the Cicero Lube Plant in Cicero, Illinois, and while employed, participated in Mobil's employee benefit plan, which provided that employees who were disabled by injury or sickness ("short-term disability") not related to work were given leave and paid their base salary during the period of disability.[1] During Lindemann's period of employment, she received a copy of the disability benefits plan, which set forth in detail the requirements of the short-term disability program. Specifically, the plan provided that in order to qualify for short-term disability benefits, employees were required to: (1) notify their

supervisors of the short-term disability as soon as possible; (2) obtain their supervisors' approval of their absence as "an excused absence due to disability"; and (3) provide medical evidence of the disability when requested. Under the short-term disability plan, employees earned benefits that increased with their duration of service to the company. Lindemann was entitled to the maximum short-term disability benefit, twelve weeks of absence due to disability or sickness with full-pay and, thereafter, up to forty weeks of absence at half-pay, because she had been employed by Mobil for more than ten years.

In addition to the short-term disability plan, Mobil required its employees to observe a "no fault" attendance policy, under which an employee could be disciplined for absences, *regardless of whether or not they were "excused" absences as provided for under the short-term disability plan.*[2] The policy involved a three-step process of counseling and, if necessary, discipline for absences or tardiness. The policy provided specifically:

1. Based on the circumstances and past record, an employee should normally be counseled when five (5) occurrences of absence have occurred within the past twelve months. A memo of this counseling action should be addressed to the file. The employee should be advised that this performance problem will also be addressed in the annual appraisal.

2. If an employee fails to improve after counseling or to sustain improvement in subsequent periods, the counseling should be repeated. (Normally, sustained improvement is no additional absence within 3 months of the incident that precipitated the counseling.) This second action should be confirmed in writing, outlining the nature of the attendance problem, stressing the importance of improving and specify-

---

1. The parties do not dispute that Mobil's employee benefit plan is covered by ERISA.

2. The policy stated: "In addition to addressing situations of excess absenteeism, supervisors should be alert to carelessness in the observance of office hours. Often, tardiness is a companion

difficulty for employees with frequent absences. Tardiness occurrences should be entered on the Annual Attendance Record, and periodically reviewed." Lindemann was provided with a copy of Mobil's attendance policy during a counseling session on July 23, 1993.

ing a time frame and objective for improvement.

3. If an employee again fails to meet the objectives for improvement, appropriate additional corrective action should be considered. (e.g. additional letters, termination, etc.)

*All absences, including "excused" sickness and disability absences provided for in the short-term disability plan are counted towards compliance with the attendance policy.*[3] Mobil instructed managers to consider an employee's absences in making disciplinary decisions.

In December of 1992, when Lindemann asked for three days off for laser surgery for treatment of a cataract, her then supervisor, Matt Burbach ("Burbach"), approved the request. During the following year and a half, Lindemann called in sick on 25 days. On each of these occasions, she received her full base pay, reflecting the fact that Mobil considered her absences "excused absences due to disability" under the benefit plan.

Lindemann was admittedly late for work on many occasions. Because of her tardiness, she failed to attend promptly the plant's daily production meeting at the start of the day. She, along with other key plant employees, was obligated to attend these meetings at the beginning of each day. On February 5, 1993, Lindemann was confronted by Burbach concerning her inability to report for production meetings in a timely fashion, in spite of the fact that the meeting time had been dropped back and rescheduled to 8:45 a.m. rather than 8:30 a.m. in order that it might accommodate her. Lindemann responded by telling him that he could "stick [the meeting] up [his] butt." Because of her excessive absences, as well as her continual pattern of tardiness, Burbach placed Lindemann in the Mobil "Goals & Objectives" program on March 22, 1993.[4]

However, because of Lindemann's continued absenteeism, on July 23, 1993, Burbach

counseled Lindemann and gave her a copy of the attendance policy. Burbach warned her that if she failed to improve her attendance record, she could be further disciplined or discharged. Burbach also repeatedly informed Lindemann that even though her absences were excused under Mobil's employee benefit plan, they were nonetheless recorded and counted against her for the purposes of the attendance policy. Indeed, Lindemann admitted that she was aware of this procedure.

On November 4, 1993, Lindemann was issued a "Final Letter of Warning" after five additional absences during the month of August, 1993. In April of 1994, the plaintiff's new supervisor, Janet Lieb ("Lieb"), told Lindemann that her salary increase was low because of her continual attendance problems. Finally, on the morning of May 31, 1994, Lindemann telephoned Lieb from her home and asked if she could be excused that day for unscheduled vacation (Lindemann was not requesting a sick day).[5] When Lieb told Lindemann that she could not be excused because Lieb needed Lindemann to work that day, even if she arrived late, Lindemann replied that she was ill and would have to remain at home. The following day, June 1, Lindemann again called Lieb and asked for another day off due to illness.

On June 2, 1994, Lieb called her supervisor, Jim Lewis ("Lewis"), the Cicero Plant Supervisor, and advised him that Lindemann's pattern of absences was causing production problems at the plant. Lieb then explained what had happened on May 31 and June 1. Lindemann's file reflected that she had been counseled for attendance problems during 1993 on March 19, July 23, July 31, and October 26. The file also contained the "Final Letter of Warning" dated November 4, 1993. Lewis and Lieb agreed that Lindemann's poor attendance record was grounds

---

**3.** Absences with documented doctor's excuses also count towards Mobil's attendance policy limitations.

**4.** "Goals & Objectives" is a program Mobil uses when it: (1) finds deficiencies in an employee's performance; (2) defines those deficiencies for

the employee; and (3) puts the employee on notice to improve those deficiencies or face additional disciplinary action.

**5.** Note that the previous day, May 30, was the Memorial Day holiday.

for termination and Lieb drafted Lindemann's termination letter.[6]

On June 6, 1994, the plaintiff was dismissed for absenteeism in violation of the attendance policy. Lindemann's letter of termination provided in part:

A review of your attendance record for the past 24 months illustrates the factors which resulted in your termination:

| December 29–31, 1992 | Absent 3 days |
| January 18–21, 1993 | Absent 4 days |
| March 15–17, 1993 | Absent 3 days |
| July 19–22, 1993 | Absent 4 days |
| August 24–27, 1993 | Absent 4 days |
| November 4, 1993 | FINAL WARNING LETTER FOR CHRONIC TARDINESS/ ATTENDANCE |
| February 23–March 4, 1994 | Absent 8 days |

Mobil agrees that each absence cited in the termination letter was an "excused absence due to disability" approved by the company pursuant to the short-term disability benefits program. The termination letter also cited tardiness as a reason for dismissal, stating "your absences and lateness causes problems ... in scheduling your work" and "[p]art of your job responsibility is to report to work regularly and on time."

On August 18, 1994, Lindemann filed suit in federal court, alleging that Mobil fired her in retaliation for her use of short-term disability benefits. Mobil argued in a summary judgment motion that Lindemann was terminated for her absences, not for her use of benefits, and that excessive absenteeism is a legitimate, non-discriminatory reason for discharge, even when excused as required under the short-term disability plan. The court granted Mobil's motion, finding that Lindemann was required to pursue internal administrative procedures before seeking recourse in the courts. *See Lindemann v. Mobil Oil Corp.*, 888 F.Supp. 859 (N.D.Ill.1995). This Court affirmed the trial court's ruling in *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647 (7th Cir.1996). Thereafter, Lindemann submitted an internal administrative complaint to Mobil, which was denied on February 14, 1996. Before receiving the denial, Lindemann commenced this action, and the court granted Mobil's motion for summary judgment.

## II. ISSUE

Lindemann asserts that the district court erred in granting Mobil's summary judgment motion because Mobil was guilty of violating section 510 of ERISA, 29 U.S.C. § 1140, when it intentionally discharged her for absenteeism. Lindemann argues that she was entitled to use sick days with impunity, and in this case, Mobil had excused and approved her absences as "absences due to disability."

## III. DISCUSSION

### A. Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*. *See Illinois Conf. of Teamsters and Employers Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1364 (7th Cir.1995); *Schroeder v. Copley Newspaper*, 879 F.2d 266, 268 (7th Cir.1989). A grant of summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). In a summary judgment motion, the moving party initially bears the burden to demonstrate the absence of genuine issues of material fact, indicating that judgment should be granted as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the opposing party must present specific facts in support of each element of the claim, demonstrating a genuine issue for trial. *Id.* at 322–23, 106 S.Ct. at 2552–53. A court will affirm a grant of summary judgment "if no reasonable jury would render a verdict for the opposing party if the record at trial were identical to the record compiled in the summary judgment proceeding." *CSX Transp., Inc. v. Chicago & North Western*

---

**6.** The letter was in turn reviewed by Lewis, Bob Harrop, the Employee Relations Advisor at the Cicero Plant, and John Thomas, the Plant Manager.

*Transp. Co., Inc.*, 62 F.3d 185, 188 (7th Cir. 1995) (citation and internal quotation omitted).

### B. Section 510 of ERISA and the Defendant's Decision to Discharge the Plaintiff for Excessive Absenteeism

■ Section 510 of ERISA provides in part:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan....

29 U.S.C. § 1140. In enacting section 510, Congress' primary aim was to prevent " 'unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights' " or other benefits. *Meredith v. Navistar Int'l Transp. Corp.*, 935 F.2d 124, 127 (7th Cir. 1991) (quoting *Conkwright v. Westinghouse Elec. Corp.*, 933 F.2d 231, 237 (4th Cir.1991)). Thus, section 510 of ERISA protects employees against dismissal by employers who seek to limit costs of health benefit plans by preventing the use of such benefits.

### 1. ERISA's Specific Intent Requirement

■ To prove a violation of section 510, plaintiffs must establish more than a loss of benefits; they must demonstrate that their employers terminated them with the specific intent of preventing or retaliating for the use of benefits. *See Little v. Cox's Supermarkets*, 71 F.3d 637, 642 n. 3 (7th Cir.1995) (holding that "a plaintiff in an ERISA action must demonstrate that the employer had the 'specific intent' to violate the statute."); *Teumer v. General Motors Corp.*, 34 F.3d 542, 550 (7th Cir.1994) ("A plaintiff seeking relief under § 510 must establish that the complained of action affecting his employment situation was taken by his employer with the specific intent of interfering with his benefit rights."). In other words, "the plaintiff must ultimately show that a desire to frustrate [the plaintiff's] attainment or enjoyment of benefit rights contributed toward the employer's decision and [the plaintiff] can avoid summary judgment only if the materials

properly before the district court, construed sympathetically, allow for such a conclusion." *Id. See Turner v. Schering–Plough Corp.*, 901 F.2d 335, 347 (3d Cir.1990) ("To recover under section 510 the employee must show that the employer made a conscious decision to interfere with the employee's attainment of ... benefits."). " '[N]o action lies where the alleged loss of rights is a mere consequence, as opposed to a motivating factor behind the termination.' " *Meredith*, 935 F.2d at 127 (quoting *Dytrt v. Mountain State Telephone and Telegraph Co.*, 921 F.2d 889, 896 (9th Cir.1990)).

■ In the case before us, the plaintiff contends that the specific intent standard has been satisfied. In her brief, Lindemann asserts that her supervisors "followed a policy which required them to consider the nature of plaintiff's absences and to consider her individual circumstances" in making the decision to terminate. She notes further:

[T]hey reviewed the plaintiff's personal file, including plaintiff's attendance record. Each date of absence listed in defendant's June 6, 1994 termination letter is marked in those attendance records with an "S" for "sickness." Other documents in plaintiff's personnel file show that the absences cited by the defendant in its June 6, 1994 termination letter were excused and approved absences due to disability. The record shows that defendant's managers repeatedly threatened plaintiff upon her returns from sick day absences, warning her that she could be discharged if absent again, despite plaintiff's protestations that her absences were excused and approved uses of sick days. Such evidence of defendant's specific and impermissible intent must be construed "sympathetically" in the plaintiff's favor.

(citations omitted). The district court found the plaintiff's reasoning on this point lacking:

Lindemann ... equates termination based on absences that happen to have involved the use of short term disability benefits with termination based on the use of benefits itself.... As Lindemann cannot point to any language in the termination letter suggesting a specific intent on Mobil's part to retaliate against her because of her use

of short term disability benefits, as opposed to her absences, the letter does not demonstrate the specific retaliatory intent required under § 510.

We agree with the trial court's reasoning. This Court has held that when attempting to establish intent under section 510 of ERISA, "[p]roof of pretext is required." *Little*, 71 F.3d at 643. Such proof may be supplied by direct or circumstantial evidence. *Id.* "The sufficiency of that evidence, however, clearly remains within our review." *Id.*

 Circumstantial evidence of discrimination can be presented through the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), and applied by this Court in *Grottkau v. Sky Climber, Inc.*, 79 F.3d 70, 73 (7th Cir.1996). "In order to make out a prima facie case under section 510, the plaintiff must show that he (1) belongs to the protected class; (2) was qualified for his job position; and (3) was discharged or denied employment under circumstances that provide some basis for believing that the prohibited intent to retaliate was present." *Id.* (citing *Little*, 71 F.3d at 642). However, it is unnecessary for this Court to determine whether a plaintiff has established a prima facie case where a defendant has advanced a legitimate, nondiscriminatory reason for its action. *See Grottkau*, 79 F.3d at 73. "'Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant.'" *Id.* (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983)).

 In our case, we are of the opinion that Mobil has met its burden of establishing that Lindemann was dismissed for excessive absenteeism, including tardiness, and not for her use of short-term disability benefits. Absenteeism and tardiness have been recognized by this Court as legitimate, nondiscriminatory reasons for an employer to terminate an employee. *See Oates v. Discovery Zone*, 116 F.3d 1161, 1171 (7th Cir.1997). The plaintiff's termination letter makes clear that she was discharged for excessive absences, and reflects that during the five months prior to her dismissal, Lindemann was absent on ten occasions. Lindemann was counseled on five separate occasions for her attendance problems and was warned orally as well as being given a letter advising that further absences would result in termination. Added thereto, Lindemann admitted that she "did not always" make it to work by 8 a.m., her starting time, and that in those instances, she also failed to follow the company rules and regulations in which she was required to mark a "T," for "tardy," on her time card.

On review, we also note that the plaintiff, who carries the burden of proof, has failed to point us to any evidence in the record in support of her conclusion that her supervisors even considered, much less relied on, her past or future receipt of short-term disability benefits in their termination decision. As such, the element of pretext required under section 510 analysis is missing. Lindemann was the beneficiary of each and every disability benefit she was entitled to. According to Mobil's attendance policy,[7] Lindemann's absence and/or tardiness on May 31, 1994, June 1, 1994, and June 6, 1994, constituted three violations of the attendance policy after her second counseling, and warranted "additional corrective action." Within the parameters of the attendance policy, Mobil elected to terminate the plaintiff. Furthermore, Burbach testified that he neither had any knowledge of, nor did he consider whether Lindemann was entitled to, or was actually paid, short-term disability benefits for any of the days that she was absent.

7. The attendance policy specifically provides:

If an employee fails to improve after counseling or to sustain improvement in subsequent periods, the counseling should be repeated. (Normally, sustained improvement is no additional absence within 3 months of the incident that precipitated the counseling.) This second action should be confirmed in writing, outlining the nature of the attendance problem, stressing the importance of improving and specifying a time frame and objective for improvement.... If an employee again fails to meet the objectives for improvement, appropriate additional corrective action should be considered. (e.g. additional letters, termination, etc.)

Burbach also testified that because Mobil's "no fault" attendance policy did not distinguish between absences due to illness or absences for other reasons, it made no difference to him whether or not the absence was truly a sick day. Lindemann has failed to adduce any evidence that would contravene the company's reasons for discharging her, thus she failed to substantiate her claim. As a result, her "reconstruction" of Mobil's decision to terminate is pure speculation at best.

We hold that Lindemann failed to provide evidence to suggest that Mobil fired her with the intent of depriving her of short-term disability benefits. Under the evidence presented, Lindemann's section 510 claim must fail.

### 2. ERISA and the Plaintiff's Absenteeism

■ The plaintiff contends that absenteeism cannot be a legitimate reason for discharge where an employee's absences are uses of ERISA-protected sick leave or short-term disability benefits. The trial judge rejected this claim, noting that "the case law is squarely against her," and that "[c]ourts have ruled that excessive absenteeism is a legitimate reason for terminating an employee." *See Oates*, 116 F.3d at 1171.

We agree with the trial court. Section 510 states that "it shall be unlawful for any person to discharge ... a participant for exercising any right to which he is entitled under the provisions of an employee benefit plan...." 29 U.S.C. § 1140. Lindemann argues that by staying home, she exercised a "right" under the short-term disability provisions of the benefit plan, and thus, her dismissal was a violation of ERISA because she was terminated for her absences which were approved uses of her benefits. However, Lindemann's attempt to raise her case above the morass of contradictory case law, including *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869 (9th Cir.1989) and *Massie v. Indiana Gas Co.*, 752 F.Supp. 261 (S.D.Ind. 1990), is based on a misinterpretation of those cases and their well-settled precedent. In *Kimbro*, the Atlantic Richfield Company ("ARCO"), the defendant, maintained an employee benefit plan and attendance policy very similar to Mobil's. The plaintiff-employee sued ARCO, his former employer, alleging, *inter alia*, that the employer violated ERISA by discharging him in retaliation for the use of his sick leave benefits. *Kimbro*, 889 F.2d at 872–73. The plaintiff suffered from migraine headaches and "was discharged after ten years of employment with the company for excessive absenteeism and tardiness" after being warned that his attendance record was unsatisfactory. *Id.* The Ninth Circuit held that the evidence, including the temporal nexus between the plaintiff's use of benefits and his dismissal, was insufficient to establish a prima facie case of unfair reprisal under ERISA. *Id.* at 881. Kimbro failed to produce evidence that he was terminated "in reprisal for his prior use of sick leave benefits" rather than because of his absences. *Id.* This despite the fact that Kimbro's absences, including tardiness, were taken in accordance with the defendant's sick leave plan.

In *Massie*, the court likewise addressed a claim similar to that made by Lindemann. A discharged employee sued her former employer under ERISA, alleging that she was terminated for exercising her rights, including sick leave with and without pay, under the company's employee benefit plan. The *Massie* court distinguished between terminating an employee for absenteeism, including absences for which she received disability benefits, and terminating an employee for receiving those benefits. 752 F.Supp. at 270. The court noted that "the defendant came forward with a largely undisputed, legitimate explanation for the termination of the plaintiff, that is, excessive absenteeism. The plaintiff has not produced evidence with regard to the ERISA claim to suggest that the explanation was pretextual...." *Id.* at 271.

■ *Kimbro* and *Massie* thus both stand for the proposition that an employer can terminate an employee for absenteeism as long as the employer is terminating the employee because of the absences themselves and not because of his receipt of benefits. Attempting to distinguish *Kimbro* and *Massie* from her own case by claiming a "right to stay home" under Mobil's employee benefit plan, Lindemann ignores the requirement that plaintiffs demonstrate an employer's

specific intent to interfere with ERISA benefits. However, as noted in *Kinkead v. Southwestern Bell Telephone Co.*, "[t]o establish a prima facie case of retaliation under § 510 of ERISA, a claimant must demonstrate the existence of a causal connection between participation in a statutorily protected activity and an adverse employment action ... § 510 does not prohibit firing an employee who becomes less productive because of an illness or disability." 49 F.3d 454, 456–57 (8th Cir. 1995).

There is no doubt that employers, under section 510, are not permitted to take advantage of sick leave plans to wrongfully terminate sick employees. We also recognize that employees should not be allowed to take advantage of benefit plans similar to Mobil's, and interfere with an employer's ability to operate his business in an efficient manner. Thus, although ERISA requires that Mobil ignore Lindemann's exercise of short-term disability benefits, it in no way requires the company to ignore her absences.

Finally, Lindemann argues that if an employer is permitted to discharge employees for absenteeism where the employees' absences are uses of sick leave time under an ERISA-protected employee benefit plan, then an employee's exercise of sick leave enjoys no practical section 510 protection. To support this proposition, she cites the Third Circuit's decision in *Kowalski v. L & F Products*, where the court held that a company policy forcing an employee to choose between losing his job for the exercise of his rights under ERISA-protected benefits or keeping his job and forcing him to give up his benefits would be inherently unfair, or "a quintessential Hobson's choice." 82 F.3d 1283, 1288 (3d Cir.1996). There is nothing in the record to support Lindemann's theory that her exercise of sick leave enjoys no practical section 510 protection. Furthermore, it is obvious that Mobil never ordered her to give up her short-term disability benefits or risk being fired. The court's conclusion in *Kowalski*, is limited to ERISA-protected benefits, and has no bearing on the attendance policy considered in our case. Additionally, no court has yet to hold that a "right to stay home" is within the purview of section 510 protection. As previously noted, section 510 is not intended to prevent an employer from firing an employee due to excessive absenteeism which ultimately harms productivity, but to prevent that employer from "discharging or harassing" an employee with the specific intent of preventing the employee from "obtaining vested pension rights." *Meredith*, 935 F.2d at 127 (citation and internal quotation omitted).

We are convinced that the plaintiff has failed to establish a connection between the entitlement to disability benefits administered by Mobil and the company's attendance policy. Mobil's employee benefit plan states that "[n]either the existence of the disability plans nor any of their provisions shall restrict the Company's right to terminate employment." Indeed, "ERISA does not create new benefits for employees[.]" *Massie*, 752 F.Supp. at 268. A company cannot be expected to run a business when a necessary employee in Lindemann's position sees fit to absence herself frequently to the extent that she disrupts the company's production schedule.

### 3. The Defendant's Approval of the Plaintiff's Absences

The plaintiff's final contention is that she exercised ERISA-protected rights by being absent due to disability *with the approval of the defendant.* According to the plaintiff:

> To receive benefits, the employee must obtain her supervisor's "approval of her absence as an excused absence due to disability." That such absences are "approved" and "excused" must mean that the absences are forgiven. It must mean that the absences, if approved and excused, are exercises of rights under the benefit plan which may not permissibly be raised subsequently as grounds for discipline....
> By using terms such as "approval" and "excused" when referring to sick leave absences, defendant's plan creates an expectation in employees that they have the "right to stay home...."

Lindemann argues that ERISA does not require sick leave benefits, but having offered such benefits, Mobil must allow its employees to make use of the plan. *See Seaman v.*

*Arvida Realty Sales,* 985 F.2d 543, 547 (11th Cir.1993). Lindemann relies on *Godfrey v. Bellsouth Telecommunications, Inc.,* 89 F.3d 755, 759 (11th Cir.1996), for the proposition that a benefit plan can give an employee the "right to stay home." In *Godfrey,* an employee brought an action against her employer to recover under the provisions of the employer's ERISA-protected benefit plan. *Id.* The court opined that Godfrey's employer "disciplined her when she did stay home, *even though she had the right to stay home under the benefit plans,*" and did so to prevent her from becoming eligible for further benefits. *Id.* (emphasis added).

Lindemann's reliance on *Godfrey* is misplaced. The court in *Godfrey* found that the employer had acted with the *intent* to deprive the employee of benefits by threatening her with termination if she failed to report for work. Although a "right to stay home" is mentioned, the court's decision was based on the employer's intent to deny benefits. The facts in *Godfrey* are further distinguished from those of the case under consideration because the employer in *Godfrey* did not have an attendance policy, similar to Mobil's, providing penalties for employees who were excessively absent.

Lindemann argues that when Mobil approves and excuses absences for short-term disability, section 510 precludes an employer from firing an employee for those absences. Section 510 only precludes the employer from terminating an employee for exercising a "right" under a benefit plan, and Lindemann has failed to establish that she had a "right" to stay home. Initially, Lindemann improperly removes the word "excused" from the context of the benefit plan when she applies it to Mobil's attendance policy. Lindemann testified that she "felt her excused absences should not count as absences under the defendant's attendance policy," but when she discussed this view with her supervisors, they repeatedly and immediately attempted to correct her misconception. Second, in attempting to establish a "right to stay home," Lindemann ignores the fact that two sets of standards exist at Mobil; one determines employee eligibility for benefits and another determines how many absences an employee may have during a given period of time

without penalty. Therefore, the term "excused," when taken in context, does not amount to "condoned" or "approved" for the purpose of the attendance policy.

Policy and good business sense support Mobil's position; if Mobil allowed employees to remain at home with impunity at full salary, "[e]mployees would be encouraged to flout work rules knowing that the only sanction would be a toothless warning or a meaningless period of probation." *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 737 (7th Cir. 1994). We are confident that Congress did not intend such a result when it enacted section 510 of ERISA.

In her concurrence, Judge Rovner writes separately and states that the majority wrongly "praises Mobil's policy as making 'good business sense' " (Rovner, J., concurring at 300). However, at no point do we "praise" Mobil's attendance policy; instead, we support Mobil's *position* that its workers may not remain at home with impunity. This Court's purpose is not to pass judgment on the wording of the policy, but rather to discuss why the plaintiff's contention that she has a right to remain at home is wrong. The "right to stay home" is, in our view, an attack on the American workplace, and an attack on businesses across the nation that carry the burden of ensuring the health of the American worker; a burden that can amount to 10 percent of business payrolls. Eric M. Reisenwitz, *Absence/ Lost Time Management: Strategies to Keep the Workforce Productive,* Benefits Quarterly, Fourth Quarter, 1997, 19. Without the help of employers (such as Mobil), it is foolish to think that workers could individually afford such costs.

■ A review of the record reflects that Lindemann was terminated because of excessive absenteeism and tardiness. After Lindemann was counseled for failing to promptly attend daily meetings, she told her supervisor that he could "stick [the meeting] up [his] butt." Later, on the morning of May 31, 1994, Lindemann telephoned her supervisor to ask if she could be excused for unscheduled vacation. When her supervisor said no, Lindemann immediately responded that she was "ill" and would have to remain at

home the following two days. We do not think that businesses have an obligation to carry employees on their payrolls who display this utter contempt for clearly enunciated rules and policies. Unscheduled absences cost U.S. businesses more than $1,000 per employee annually. Diane Stafford, *I Won't Be in Today ... Coping Creatively with Absenteeism*, K.C. Star, Nov. 12, 1997, A1. This Court does "not sit as a superpersonnel department that reexamines an entity's business decisions." *Oates*, 116 F.3d at 1171 (citation and internal quotation omitted). Firms such as Mobil must have the ability to terminate unreliable workers such as Lindemann who are excessively absent and/or tardy and harm business productivity.

## IV. CONCLUSION

Even when viewing the evidence in a light most favorable to the plaintiff, Lindemann's section 510 claim must fail. In order to establish a violation of section 510, employees must demonstrate not only the loss of benefits, they must also prove that their employers terminated them with the specific intent of preventing or retaliating for the use of benefits. In this case, Lindemann failed to establish that Mobil had terminated her with the specific intent of denying her the use of her benefits. Mobil provided sufficient evidence to substantiate its claim that Lindemann was fired for absenteeism; a legitimate, non-discriminatory reason for terminating an employee under section 510. Lindemann did not acquire a "right to stay home" simply because she received benefits for her sick leave; indeed such an interpretation of Mobil's benefit plan would in effect prevent Mobil from terminating any excessively absent employee who happens to make use of sick days. Lindemann was well aware that Mobil's employee benefit plan and its absentee policy operated under different standards. Nothing in the language of section 510 or Mobil's employee benefit plan prohibits the discharging of an employee who is guilty of a pattern of excessive absence which affects the plant's efficiency and productivity.

AFFIRMED.

ROVNER, Circuit Judge, concurring.

I concur in nearly every respect with the majority, but I write separately because I am concerned about the proliferation of policies like that of the defendant, which can be very confusing to workers. The majority praises Mobil's policy as making "good business sense." *Ante* at 299. To be sure, under the law of this circuit, Mobil is entitled to enforce its so-called "no-fault" attendance policy as well as its short term disability policy. Although this probably sounds like legal hairsplitting to nonlawyers, Mobil is entitled to pay workers for days when they are absent from work due to illness, and then terminate them for being excessively absent. It may do so while terming the absences "approved" under the disability policy. Mobil may have had the right to terminate Lindemann for insubordination, but that is not what occurred here. Thus, her alleged comments to her supervisor are not at issue here. I agree with the result the majority reaches, but I believe that whether Mobil's policy makes "good business sense" is not an issue properly before the Court.