NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued June 4, 2007
Decided August 1, 2007

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

No. 06-4176

| | |
|---|---|
| SUSAN L. SMITH,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>AMERICAN FEDERATION OF<br>STATE, COUNTY AND<br>MUNICIPAL EMPLOYEES,<br>Illinois Council 31,<br>    *Defendant-Appellee.* | Appeal from the United States<br>District Court for the Central<br>District of Illinois.<br><br>No. 05 C 3031<br><br>**Jeanne E. Scott**,<br>*Judge.* |

**ORDER**

Susan Smith maintains she was terminated in violation of ERISA because her employer no longer wanted to pay her high medical expenses.  However, Smith admits her termination occurred after she refused to attend a closed-door meeting with her supervisor despite being warned her refusal would result in discipline.  She also admits her termination was ordered by an individual who was unaware of her ongoing expensive medical treatment.  Because Smith has failed to demonstrate that the defendant's proffered reason for her termination was pretextual, we affirm

the district court's grant of summary judgment to the defendant.

## I. Background

Susan Smith was employed by Illinois Council 31 of the American Federation of State, County and Municipal Employees ("Council 31") from 1990 to 2003. At the time of her termination, she was an administrative accountant in the Springfield office, and her duties included accounting and administering payroll. Although Smith's position was nonunion, she was covered by the same health and disability benefits plan as the union employees. Under that ERISA-qualified plan, Council 31 pays employee claims up to a stop/loss point, after which it is reimbursed by an insurance carrier. When Smith worked at Council 31, that point was around $60,000 per beneficiary, and $2 million in the aggregate.

Smith's direct supervisor at the time of her termination was Business Manager William Sarver, who also worked in the Springfield office. Sarver, in turn, reported to Executive Director Henry Bayer, who worked in the Chicago office. Although Bayer approved Council 31's monthly financial reports, Sarver reviewed weekly expense reports, including employees' insurance claims. According to Smith, Sarver reviewed these claims in detail and often showed interest in why employees were taking certain medications or submitting large bills. A customer service representative for Council 31's insurance provider stated that Sarver typically inquired into the conditions, prognoses, and future costs of employees who submitted large medical bills.

In 1998 Smith was diagnosed with a brain aneurysm and underwent surgery for treatment. As a result, her medical bills for 1998 totaled $52,810.57, which Council 31's plan paid in full. Smith returned to work about three weeks after her surgery. Then in 2003, she underwent a CT scan that showed an unrelated brain tumor. She informed Council 31 that she needed a leave of absence to undergo another surgery, and the leave was granted. Smith underwent surgery to remove the tumor on May 22, 2003, and her resulting medical expenses totaling $31,391.94 were paid by Council 31.

Smith returned to work part-time on August 11, 2003. That morning, she met with Sarver, who asked how she was feeling. Smith told him she was fine, but that the doctors had been unable to remove the entire tumor during the surgery. As a result, she said, she would need a CT scan every six months and would probably need additional brain surgery in the future. Smith had Sarver feel the scar on her head; Sarver asked if the tumor was cancerous, and Smith told him it was benign. Sarver also asked why Smith was wearing glasses, and she responded that the swelling in her brain was preventing her eyes from focusing correctly. They also discussed how her condition prevented her from walking in a straight line. During the course of this fifteen-minute conversation, Office Manager Stacey Pflugmacher

was present but did not participate.

Smith began working full-time the next week. According to Council 31, a number of problems arose during these first two weeks of her return. Smith took an emergency vacation day without providing an explanation or receiving permission and took a few hours off another day. Smith maintained she should be paid for these absences out of sick and vacation time she accrued during her three-month absence, but Sarver and Pflugmacher maintained she accrued no time during that period. A dispute arose over a payroll check for which Pflugmacher maintained Smith miscalculated the withholding. Smith also sent department correspondence out in her own name, which Sarver maintains he had repeatedly told her not to do.

Sarver had a telephone conversation with Smith on Friday, August 22, to discuss these issues. During that conversation, Smith disputed the existence of any problems. When Sarver informed her she needed to provide a reason for taking emergency vacation days, Smith asked him if he was harassing her. Sarver described the call as confrontational, and he decided to have an in-person meeting with Smith the next week. On August 23 Sarver prepared notes listing the topics to discuss at the meeting. The next day, he had a telephone conversation with Bayer and discussed his concerns about Smith. Bayer told him to meet with Smith and explain his expectations, but to give her a chance to correct the problems before implementing discipline or termination. It is unclear who mentioned termination first, but Sarver and Bayer agree Bayer explicitly instructed Sarver not to terminate Smith.

Smith was out of the office on August 25, so on the morning of August 26 Sarver asked her to come to his office for a meeting. Once Smith arrived, Pflugmacher, who was also present, asked if she should close the door; Sarver said yes. Smith then stated that she would not participate in a closed-door meeting and rose to leave. Sarver ordered her to stay, but she refused and said she was going to call Bayer. Sarver told her to go ahead, and she left his office. Smith and Sarver then both called Bayer, and Sarver reached him first. After learning what had happened, Bayer told Sarver to direct Smith to attend the meeting or face discipline. Bayer then spoke with Smith, who asked to bring a witness or tape-record the meeting; Bayer denied both requests and told her the meeting was not disciplinary. He instructed Smith to attend the closed-door meeting or face discipline. Bayer then called Sarver again and told him to terminate Smith if she still refused. Shortly thereafter, Sarver called Smith to his office again; she came, but she stood in the doorway to prevent the door from being closed. Sarver then terminated her and gave her five minutes to vacate the premises.

After her termination, Smith filed retaliatory termination claims under the Americans with Disabilities Act ("ADA") and Section 510 of the Employee

Retirement and Income Security Act ("ERISA") maintaining she was fired to save Council 31 the costs of her future medical treatment. Council 31 filed for summary judgment on both claims. Smith conceded the ADA claim could not stand because she was not disabled within the terms of the statute, but she maintained there was sufficient evidence to demonstrate her termination violated ERISA. The district court disagreed, and instead concluded Smith failed to provide sufficient evidence that Council 31's proffered reason for terminating her—insubordination in refusing to attend the meeting—was pretextual. The court thus granted Council 31 summary judgment on both claims. Smith now appeals the grant of summary judgment on her ERISA claim.

## II. Discussion

We review de novo a district court's grant of summary judgment, viewing the evidence in the light most favorable to the nonmoving party. *Healy v. City of Chi.*, 450 F.3d 732, 738 (7th Cir. 2006). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

Section 510 of ERISA prohibits discharging an employee with the specific intent of preventing or retaliating against the employee's use of an ERISA-qualified benefits plan. 29 U.S.C. § 1140. When establishing this prohibited intent through indirect evidence, as Smith seeks to do, a plaintiff must demonstrate that she: (1) was a member of a protected class; (2) was qualified for her job; and (3) was discharged under circumstances that provide some basis for believing the prohibited intent was present. *See Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 296 (7th Cir. 1998). As in all cases involving this method of indirect proof, if the plaintiff succeeds in making a prima facie case, the burden shifts to the defendant to present a legitimate, nondiscriminatory reason for its action. *See Grottkau v. Sky Climber, Inc.*, 79 F.3d 70, 73 (7th Cir.1996). Once it has done so, the burden shifts back to the plaintiff to present evidence that the proffered reason is pretextual, i.e., is "a deliberate falsehood." *See Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006).

Smith maintains the district court erroneously concluded she failed to make out a prima facie case of Council 31's prohibited intent. According to Smith, this conclusion resulted from the court's incorrect refusal to draw an inference of prohibited intent from the temporal proximity of her August 11 meeting with Sarver and her August 26 termination. Although the district court's conclusion on the prima facie element is not entirely clear from its opinion, we need not resolve this dispute because Council 31 has come forward with a legitimate explanation for Smith's termination. *See Lindemann*, 141 F.3d at 296 ("[I]t is unnecessary for this Court to determine whether a plaintiff has established a prima facie case where a defendant has advanced a legitimate,

nondiscriminatory reason for its action."). Accordingly, we will proceed under the assumption that Smith has proven her prima facie case, and turn to the question of whether she has provided sufficient evidence that Council 31's proffered reason for her termination was pretextual.

Smith has provided no evidence to dispute Council 31's claim that she was insubordinate. Indeed, Smith concedes she was instructed multiple times to attend the closed-door meeting but nonetheless refused, and further admits she was warned her refusal would result in discipline. Smith insists her insubordination is irrelevant because Sarver intended to fire her all along.[1] We disagree; having brought about termination through her own insubordination, Smith cannot recover on the theory that her superiors *might* have fired her for a prohibited reason had she given them the chance. Moreover, Smith's evidence regarding Sarver's intent is irrelevant because the order to terminate came from Bayer, not Sarver. Smith admits she never discussed her ongoing treatment with Bayer, and she provides no evidence that he was aware of the future costs she might incur. Absent such knowledge, Bayer cannot have acted with the prohibited intent Smith suggests. Accordingly, Smith has failed to present a genuine dispute as to the legitimacy of Council 31's proffered reason for her termination. The district court's grant of summary judgment is thus AFFIRMED.

---

[1] Smith also makes some mention of Council 31's failure to follow union contract policies for escalating discipline prior to termination. We need not consider this argument because Smith concedes her position was not covered by the union contract.