## In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2272

MYLA NAUMAN, JANE ROLLER,
and MICHAEL LOUGHERY,

*Plaintiffs-Appellants,*

*v.*

ABBOTT LABORATORIES and HOSPIRA, INC.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 7199—**Robert W. Gettleman**, *Judge.*

ARGUED JUNE 6, 2011—DECIDED FEBRUARY 3, 2012

Before KANNE, EVANS*, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Abbott Laboratories decided to "spin" its Hospital Products Division ("HPD"), creating a separate company called Hospira. Prior to the spin,

---

* Circuit Judge Terence T. Evans died on August 10, 2011, and did not participate in the decision of this case, which is being resolved by a quorum of the panel under 28 U.S.C. § 46(d).

HPD employees had access to Abbott's pension plan. After the spin, however, HPD employees became employees of Hospira, which did not offer a pension plan but instead offered an enhanced 401(k) plan with an employer-matching provision. The terms of the spin included reciprocal no-hire policies, meaning that for two years post-spin, Abbott would not hire Hospira employees or retirees, and Hospira would not hire Abbott employees or retirees. Thus, when HPD employees ceased employment with Abbott and became employees of Hospira, their nonvested pension rights in the Abbott plan were eliminated. In addition, retirement-eligible HPD employees were effectively prevented from retiring from Abbott before the spin to begin collecting an Abbott pension, then joining Hospira.

The named plaintiffs here represent a certified class of Abbott employees terminated (though reemployed by Hospira) as a result of the spin. They alleged that Abbott violated § 510 of the Employee Retirement Income Security Act ("ERISA") by using the spin and the no-hire policy to get rid of unwanted pension liability. They also claimed that Hospira used the no-hire policy to deter HPD employees from exercising pension benefits before the spin. Finally, they alleged that Abbott breached its fiduciary duty by failing to disclose prior to the spin that Hospira would not offer pension benefits. After a nine-day bench trial, the district court entered judgment for Abbott and Hospira on all counts. The plaintiffs appealed.

We affirm. The § 510 claims failed because Abbott and Hospira did not act with the requisite intent to interfere with the plaintiffs' pension benefits. The district judge specifically found that employee benefits played no role in the decision to spin HPD and implement the no-hire policy, and these findings are not clearly erroneous. The breach-of-fiduciary-duty claim failed because Abbott had nothing to do with the Hospira benefits plan and because Abbott reported truthfully to HPD employees that their benefits might change after the spin. These findings, too, are supported by the evidence.

## I. Background

Abbott Laboratories is a major pharmaceuticals company with headquarters in northern Illinois. Its Hospital Products Division ("HPD"), while well established and profitable, was resource intensive and had a slow growth rate, whereas Abbott preferred high growth. On the advice of several financial advisors, Abbott determined that HPD and Abbott would be worth more separate than together. So Abbott decided to "spin" HPD, meaning that HPD would become its own company, to be called Hospira, with each Abbott shareholder receiving pro rata shares of the new company.

Abbott approved the spin in June 2003 and announced it publicly two months later. The spin would take place on April 30, 2004, and Hospira would be live the next day. In the announcement Abbott stated that HPD employees would remain on Abbott's various benefits plans until the spin. After the spin the new Hospira

employees would continue to receive the same benefits through a transitional plan set up by Abbott but managed by Hospira until the end of 2004. At that point Hospira employees would receive benefits through a not-yet-created Hospira plan, which Hospira management would design post-spin.

Critical to the success of the spin was retaining the roughly 15,000 HPD employees at Hospira. As a result and consistent with external advice, Abbott: (1) prohibited HPD employees tapped for Hospira from transferring within Abbott; (2) announced that for two years after the spin, Abbott would not hire anyone who left Hospira; and (3) announced that for two years after the spin, Hospira would not hire anyone who left Abbott. The question then arose whether an exception would be made for retirement-eligible HPD employees. Specifically, could these employees retire from Abbott, begin receiving their pensions, and then join Hospira? Ultimately, Abbott announced pre-spin that this would not be possible. This decision was made for several reasons. First, Abbott's tax advisors believed it would violate tax law and therefore cause the relevant benefits plans to lose their tax-deferred status. Another reason had to do with productivity: Some employees receiving both a pension and a salary for the same job might not work as hard.

Even more critical to the success of the spin was retaining certain HPD executives at Hospira. Retention bonuses are common in these circumstances. Abbott's benefits plan offered a valuable retiree medical program,

providing medical benefits to vested employees even after leaving Abbott. Pre-spin, it was unknown whether Hospira would offer a similar benefit, which was unsettling to five key HPD executives who were not yet vested in the plan. To allay their concerns and provide a retention incentive, Abbott simply gave the executives retention bonuses in an amount equal to their expected future medical claims.

After the spin Hospira approved a benefits plan that did not offer pension or retiree medical benefits. Instead, the Hospira plan offered an enhanced 401(k) plan with generous employer-matching provisions.

HPD-turned-Hospira employees Myla Nauman, Jane Roller, and Michael Loughery filed this lawsuit on behalf of themselves and a proposed class of employees whose employment at Abbott was terminated as a consequence of the spin. They alleged four counts: (I) Abbott carried out the spin transaction to interfere with the benefits of HPD employees in violation of § 510 of ERISA; (II) Abbott designed the no-hire policy to interfere with the benefits of HPD employees in violation of § 510 of ERISA; (III) Hospira designed the no-hire policy to interfere with the benefits of HPD-turned-Hospira employees in violation of § 510 of ERISA; and (IV) Abbott and Hospira breached fiduciary duties under ERISA by failing to disclose material information about the Hospira benefits plan. The district court certified a

class,[1] dismissed Count IV against Hospira because the alleged fiduciary breach occurred prior to its existence, and denied the parties' cross-motions for summary judgment. After a bench trial, the court found for the defendants on all claims, entering comprehensive findings of fact and conclusions of law, which we will discuss in more detail below.

## II. Discussion

The plaintiffs appeal from a judgment entered after a bench trial; we review factual findings for clear error and legal conclusions de novo. *Kelley v. Chi. Park Dist.*, 635 F.3d 290, 295 (7th Cir. 2011). A factual finding is clearly erroneous "only if we are firmly convinced after we review all of the evidence that a mistake has been made." *United States v. Hill*, 645 F.3d 900, 907 (7th Cir. 2011).

## A.  ERISA § 510

Section 510 of ERISA, titled "Interference with protected rights," states in relevant part:

---

[1]  The class for Counts I, II, and IV was defined as "[a]ll employees of Abbott who were participants in the Abbott Benefit Plans whose employment with Abbott was terminated . . . as a result of the spin-off." For Count III a subclass was certified and defined as class members "who were eligible for retirement under the Abbott Benefit Plans on the date of their terminations." Only Loughery represents the subclass.

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

29 U.S.C. § 1140. This provision prohibits retaliation for the exercise of plan benefits and interference with the attainment of those benefits. But plaintiffs claiming a violation of § 510 "must establish more than a loss of benefits; they must demonstrate that their employers [acted] with the specific intent of preventing or retaliating for the use of benefits." *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 295 (7th Cir. 1998). In other words, employers must have been motivated by "a desire to frustrate attainment or enjoyment of benefit rights." *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 796 (7th Cir. 2005) (quotation marks omitted).[2]

---

[2] The plaintiffs challenge the district court's conclusion, based on *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), that § 510 requires but-for causation. *Gross* interpreted the Age Discrimination in Employment Act, but we have applied its reasoning in other contexts. *See, e.g.*, *Serafinn v. Local 722*, 597 F.3d 908, 915 (7th Cir. 2010) (Labor Management Reporting and Disclosure Act); *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 961-62 (7th Cir. 2010) (Americans with Disabilities Act); *Fairley v. Andrews*, 578 F.3d 518, 525-26 (7th Cir. 2009) (§ 1983 First Amendment). In *Fairley* we said that "unless

(continued...)

The plaintiffs' theory is that Abbott wanted to rid itself of some of its pension liability so it spun HPD, knowing that Hospira would not provide a similar plan. On this view the Abbott no-hire policy ensured that HPD employees could not simply return to Abbott and retain their pension rights. But after a lengthy bench trial, the district judge found that "employee benefits simply had no part of [the decision to spin HPD]." The plaintiffs have not directly challenged that finding on appeal, and in any case, it was not clear error. The judge supported this general finding with many specific findings relating to witness testimony and documentary evidence. For example, the judge found that "[e]very witness who testified at trial stated that the spin decision had nothing to do with employee benefits," and that "[t]he HPD spin rationale was repeatedly documented and employee benefits was never once mentioned as a factor in the spin decision."

---

(...continued)

a statute . . . provides otherwise, demonstrating but-for causation is part of the plaintiff's burden in all suits under federal law." 578 F.3d at 525-26. The issue "turns on the language of the statute and the presence or absence of text akin to that of Title VII which authorizes mixed-motive claims." *Serwatka*, 591 F.3d at 961. Section 510 does not explicitly permit such claims, so on the strength of this caselaw, but-for causation is probably required. We need not decide the issue, however, because the district judge as the trier of fact specifically found that a desire to frustrate benefits played *no* role in the defendants' actions, and that finding is not clearly erroneous.

The plaintiffs also argued that the Hospira no-hire policy was designed to interfere with employee benefits. Specifically, the plaintiffs alleged that the policy was intended to deter retirement-eligible HPD employees from retiring from Abbott to start the flow of pension benefits because if they did, they could not subsequently join Hospira. But the district judge found that "[t]he no-hire policy was not 'motivated by an intention to interfere with any of the employees['] benefits.'" Again, the plaintiffs have not directly challenged that finding on appeal, and again, it was not clear error. The judge found that the no-hire policy was created to promote stability and productivity at both companies post-spin; these findings are well supported by the evidence.

On appeal the plaintiffs change course and argue that the companies discriminated against Abbott retirees by colluding to preclude their employment at Hospira. As we have explained, under the no-hire policy, Hospira would refuse to hire Abbott retirees. The companies adopted the policy because (among other reasons) they thought that allowing employees to collect a retirement pension from Abbott *and* a full salary from Hospira for the very same job could lead to productivity problems. The plaintiffs assert that these facts suggest discrimination based on an invidious stereotype that retirees are lazy.

This new theory sounds like a claim of discriminatory failure to hire, which is unusual in the § 510 context. Regardless, this case is an improper vehicle for such a claim because the named plaintiffs did *not* retire from Abbott and *were* in fact hired by Hospira. So the argu-

ment must be that the companies used the *threat* of discrimination—as embodied in Hospira's no-hire policy— o *deter* HPD employees from retiring. But this leads us back to the district judge's finding that the no-hire policy was not motivated by an intent to interfere with employee benefits. In short, however the argument is framed, the fundamental problem is that § 510 requires a specific intent, proof of which is lacking here. *See Isbell*, 418 F.3d at 796; *Lindemann*, 141 F.3d at 295.

**B. Breach of Fiduciary Duty**

"A claim for breach of fiduciary duty under ERISA is only valid against a 'fiduciary.'" *Baker v. Kingsley*, 387 F.3d 649, 660 (7th Cir. 2004). A "fiduciary" is "a person who exercises authority or discretion over the administration of a plan, but only when performing those functions." *Beach v. Commonwealth Edison Co.*, 382 F.3d 656, 658 (7th Cir. 2004) (citing 29 U.S.C. § 1002(21)(A)); *see also Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) ("In every case charging breach of ERISA fiduciary duty, . . . the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."). Thus, fiduciary duties are "plan-specific." *Beach*, 382 F.3d at 658.

The plaintiffs alleged that prior to the spin, Abbott helped create the Hospira benefits plan and thus had a fiduciary duty to disclose the Hospira plan's details to employees. They claimed that instead of disclosing what

it knew, Abbott misled employees into believing that the Hospira plan would be similar to the Abbott plan.

The district judge made several factual findings that defeated this claim. Specifically, the judge found that pre-spin, Abbott consistently told employees that Hospira would set up its own employee-benefits plan and that its benefits could be entirely different from Abbott's. The judge also found that consistent with these representations, Hospira indeed made its own decisions regarding employee benefits after the spin. Accordingly, the judge concluded that Abbott owed no duty to the plaintiffs with respect to the Hospira plan. Even assuming otherwise, the judge found that Abbott committed no breach because its communications were entirely truthful.

The plaintiffs dispute that Hospira made its own decisions about benefits after the spin. This argument is based on an inference they invite us to draw from Abbot's decision to offer executive retention bonuses. As we have noted, several key HPD executives were paid retention bonuses in an amount equal to the value of Abbott's retiree medical program, a benefit that Hospira ultimately did not offer. The plaintiffs argue that this evidence suggests that Abbott knew the details of the Hospira plan before the spin took place.

But the district judge made specific findings rejecting this exact argument. The judge found that at the time of the bonus decisions, Hospira's benefits plan had not yet been created, so it was unknown whether Hospira would offer retiree medical benefits. This was a concern

to the executives who were not yet vested in the retiree medical program. Abbott's decision to offer executive retention bonuses was a response to this uncertainty. That is, to offset the fears of key executives and provide an incentive for them to remain, Abbott simply gave retention bonuses equal to the benefits' future value. The judge's findings on this point are supported by the testimony of Abbott executives and are not clearly erroneous. Because the plan was created by Hospira after the spin and without input from Abbott, the conclusion that Abbott had no fiduciary duty with respect to the plan naturally follows. *See* 29 U.S.C. § 1002(21)(A); *Beach*, 382 F.3d at 658.

Assuming the existence of a fiduciary duty, the judge also found that Abbott committed no breach because it did not materially misrepresent anything about the not-yet-developed Hospira plan. Abbott told employees that Hospira would create its own benefits plan after the spin and that the Hospira plan could be entirely different from the Abbott plan. Those statements were entirely true; nothing in the record suggests otherwise.

AFFIRMED.